[L.A. No. 29890. In Bank. Dec. 29, 1971.]

CLARENCE M. BOYD, Plaintiff and Respondent, v.
CITY OF SANTA ANA, Defendant and Appellant.

394

**COUNSEL**

William L. Mock and James A. Withers, City Attorneys, for Defendant and Appellant.

Frederick E. Hopper for Plaintiff and Respondent.

**OPINION**

**PETERS, J.**—Clarence M. Boyd was employed by the Police Department of the City of Santa Ana in 1949. On April 7, 1969, when he was classified as a police sergeant, his employment was terminated. Boyd requested a hearing before the personnel board of the city, and the board after a hearing upheld the termination. He commenced this proceeding, and the trial court issued a peremptory writ of mandate directing the city to reinstate him with back pay, to pay him certain wages wrongfully withheld, and to credit him with vacation and holiday benefits improperly withheld. The city appeals.

Beginning in 1965, Boyd suffered from stomach ulcers. Due to illness he was absent from work 46 days in 1965, 21 days in 1966, 71 days in 1967, 18 days in 1968 prior to September 22, and then from that date to March 16, 1969. Most but not all of the absences were due to the ulcer condition.

The medical evidence was that Boyd's emotional and genetic makeup was such that he would continue to have ulcer problems as long as he was employed as a policeman because of the stresses incident to police work. Medical reports recommended that he obtain less stressful employment. One of the latest of these reports stated that he was not disabled at the present time, that, since he had been separated from the stresses of his position as an officer for several months, his ulcer had healed with no residual deformity, but that he could be expected to have recurrent episodes should he again resume his stressful relationship with the police department.

In 1967, Boyd obtained an award from the Workmen's Compensation Appeals Board of permanent disability of 36¾ percent. The basis of the award was his ulcerous condition. A petition to reopen by the city was dismissed in 1969.

In October 1968, the city's personnel director instructed Boyd to apply to the state for disability retirement.[1] Boyd did so. The application was

---

[1]Since 1970, the city would have been required to seek the pension on behalf of

denied on March 6, 1969. Boyd was ordered to return to work, and he did so until the termination on April 7.

It is undisputed that at all times, when working, Boyd was performing his assigned duties properly.

In upholding the termination, the personnel board found that Boyd was not physically fit to discharge the duties of a police officer. In ordering reinstatement, the trial court found that the termination of Boyd's employment was a wrongful discharge, was an arbitrary abuse of discretion, and was contrary to law, and that the board's finding was not supported by substantial evidence.

The city contends that the city charter provides for discharge of an employee for incompetence, that under the provision an employee who is physically unable to perform his duties may be discharged, and that the evidence shows that due to his ulcerous condition Boyd was unable to discharge his duties. It is not disputed that the disability is employment related.

We have concluded that the termination of employment is contrary to the provisions of the Labor Code because the record is undisputed that any disabilities suffered by Boyd arose out of and in the course of his duties.

Section 4850 of that code provides: "Whenever any city policeman . . . who is a member of the Public Employees' Retirement System . . . is disabled, whether temporarily or permanently, by injury or illness arising out of and in the course of his duties, he shall become entitled, regardless of his period of service with the city or county, to leave of absence while so disabled without loss of salary, in lieu of temporary disability payments, if any, which would be payable under this chapter, for the period of such disability but not exceeding one year, or until such earlier date as he is retired on permanent disability pension. . . ."

Section 4853 of the code provides: "Whenever such disability of any such officer or employee continues for a period beyond one year, such member shall thereafter be subject as to disability indemnity to the provisions of this division other than Section 4850 during the remainder of the period of said disability or until the effective date of his retirement under the Public Employees' Retirement Act, and the leave of absence shall continue."

---

persons like petitioner. Section 21023.5 of the Government Code now provides: "Notwithstanding any other provision of law, an employer *may not separate because of disability* a member otherwise eligible to retire for disability *but shall apply for disability retirement* of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20393." (Italics added.)

█ Payments pursuant to section 4850 are not salary but workmen's compensation benefits. The Workmen's Compensation Appeals Board has jurisdiction, when requested, to determine whether the disability arose out of or occurred in the course of duty, but the board has neither the power nor the duty to fix the amount of compensation by an award. The liability of the city under the section is enforceable in the courts in mandamus proceedings. (Lab. Code, § 4851; *Eason* v. *City of Riverside*, 233 Cal.App.2d 190, 193-195 [43 Cal.Rptr. 408]; *Hawthorn* v. *City of Beverly Hills*, 111 Cal.App.2d 723, 727 et seq. [245 P.2d 352]; *Hawthorn* v. *Industrial Acc. Com.*, 101 Cal.App.2d 568, 569 et seq. [225 P.2d 966].)

█ Section 4850 applies whether the disability is temporary or permanent. The section makes clear that a policeman disabled "temporarily or permanently" by injury or illness arising out of and in the course of his duties is "entitled" to leave of absence without loss of salary for one year or until retirement on disability pension. █ Under section 4853, the policeman, after the leave of absence with pay has expired, is entitled to continue his leave of absence without pay until retirement and is also permitted to secure benefits under the workmen's compensation law.

█ A city may not deprive a police officer of these valuable benefits by terminating his employment on grounds of physical fitness where his disability is due to injury or illness arising out of and in the course of his duties. Otherwise the valuable rights conferred upon police officers by sections 4850 and 4853 of the Labor Code could be lost at the whim of the city.

All of the evidence in the instant case relied upon by the city to show physical unfitness also shows that Boyd's disability arises out of and occurred in the course of his duties. The Workmen's Compensation Appeals Board so found. In the circumstances we are satisfied that the city could not terminate his employment on the basis of his physical unfitness without regard to the rights conferred by section 4850.[2]

At oral argument before this court the parties were permitted to augment the record to show that the Public Employees Retirement System granted Boyd a disability retirement on October 23, 1969, effective July 1, 1969. (The peremptory writ of mandate herein was served on August 22, 1969.) The city urges that the retirement system should have granted a disability retirement effective April 7, 1969, because assertedly the evidence shows that he was disabled as of that date. However, the retirement system's

---

[2]It is not clear from the record whether Boyd, prior to the termination of April 7, 1969, had received any of the one-year leave of absence with pay under section 4850 or whether his prior absences were offset against accumulated sick and vacation pay.

order is not subject to review in this proceeding, and we do not know what evidence was presented to the retirement system.

The city also urges that the burden was upon Boyd to secure his disability retirement effective April 7, 1969, and that the city should not have to pay the salary from that date to the commencement of the retirement. Section 4850, which expressly applies to members of the retirement system, contemplates that there may be a hiatus between the onset of disability and retirement on a permanent disability pension, in which case the policeman is entitled "to leave of absence while so disabled without loss of salary" for a period not exceeding one year. The purpose of the section is obviously to provide for full salary during the period between the city's determination and the commencement of the pension. To hold that the burden was on the policeman to obtain a disability pension as of the date the city determined he was disabled and that his failure to do so barred resort to rights conferred by section 4850 would defeat the purpose of the section. It should be noted that at the times relevant here the city as well as Boyd could have applied for the disability retirement. (Gov. Code, § 21023.) Since 1970, the city has been required to apply for the disability retirement. (See fn. 1.)

The trial court also ordered the city to pay to Boyd wages wrongfully withheld by the city while he was on leave from September 22, 1968 to March 16, 1969. The period mentioned is prior to the termination of employment. The only contention made by the city with respect to this part of the judgment is that Boyd could not properly raise the issue because he did not raise it before the personnel board. However, the city has made no showing that the personnel board had authority to award the back pay or that resort to the personnel board was a condition to seeking judicial relief.[3]

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[3]The city made no contention with respect to this part of the judgment in its opening brief. In its closing brief, the city devotes only five lines to the point. In its brief filed after oral argument pursuant to leave of court, the city, although treating the matter at greater length, still fails to call our attention to any provision of law which specifies that any administrative agency of the city is authorized to hear claims for wages wrongfully withheld.