[Civ. No. 13358. Fourth Dist., Div. Two. Nov. 15, 1974.]

DONALD K. HADLEY, Plaintiff and Appellant, v.
CITY OF ONTARIO et al., Defendants and Respondents.

COUNSEL

Evans & Hobson for Plaintiff and Appellant.

Lynn W. Kloepher for Defendants and Respondents.

OPINION

WHYTE, J.*—This is an appeal from a judgment entered (pursuant to an order of this court in *Hadley* v. *Superior Court* (1972) 29 Cal.App.3d 389 [105 Cal.Rptr. 500]) February 21, 1973, denying a petition for writ of mandate filed under the provisions of Code of Civil Procedure section 1094.5 to review the actions of respondents and to compel respondent city to vacate actions taken by the city council of said respondent on January 10, 1968, and October 1, 1968, and either reinstate petitioner to his duties as a police officer or cause him to be paid retirement disability pay.

FACTS

On January 16, 1965, petitioner was hired by the City of Ontario as a police officer and became a local safety member of the Public Employees Retirement System as provided by section 21022 of the Government Code. In 1966 petitioner filed an application for workmen's compensation benefits claiming that he was injured March 2, 1966. On January 19, 1967, the Workmen's Compensation Appeals Board of the State of California issued its findings and award, finding that the injury occurred in the scope and course of employment and resulted in permanent disability to the extent of 20½ percent.

Petitioner was temporarily disabled from March 2, 1966, through May 9, 1966. He returned to his regular duties as a police officer on May 10, 1966, and continued to perform such duties until on or about January 26, 1967, when he was placed on light duty. On July 25, 1967, petitioner wrote the chief of police of respondent requesting he be removed from light duty and returned to regular duty in the field as a patrolman. On July 28, 1967, his request was denied by the chief of police. Petitioner filed a letter appeal with the city manager on August 3, 1967. On August 14, 1967, the city manager denied petitioner's requests and upheld the decision of the chief of police. On August 15, 1967, petitioner appealed

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

to the city council of the respondent city. A hearing was held before the said city council on October 2, 1967, at which time action was taken to have an additional medical examination of petitioner made by Cline M. Mapes, M.D., an orthopedic specialist. An additional hearing was held before said city council on January 10, 1968, at which time two actions were taken by said city council, one "that Officer Hadley's request to be placed on active duty as a patrolman be denied," the other "that the request by Mr. Hadley for retroactive back pay be denied."

On January 11, 1968, respondent's chief of police notified petitioner in writing that he was relieved of his police officer's classification and was transferred from the uniformed patrol division to the records and identification division "as a clerk dispatcher in civilian status." Petitioner declined to report in civilian status and on January 16, 1968, the chief of police suspended him from further service.

On September 3, 1968, petitioner applied in writing to the chief of police for reinstatement as a police officer and for salary reimbursement. The letter outlined the termination of January 10, 1968, and the subsequent application for and refusal of disability retirement pay by the state retirement system. On September 11, 1968, the chief of police denied the request citing personnel rules and regulations, section 3 "Formal Grievance Procedure"[1] and stating that petitioner "failed to follow the rules." On September 16, 1968, petitioner appealed in writing to the city manager. In reply the city manager quoted from the rule adopted by city council resolution No. 6365 dated June 6, 1967, referred to in his letter as "The applicable rule."[2] On September 3, 1968, petitioner appealed in writ-

---

[1]"Section 3. *Formal Grievance Procedure.*

"(a) The employee shall submit a written statement outlining the complaint and the circumstances surrounding it. The department head will reply in writing to the employee regarding the complaint.

"(b) If the employee feels the complaint is not resolved by the department head, he then has ten days to submit a written appeal to the City Manager outlining his complaint.

"(c) If the appeal is not resolved to the satisfaction of the employee, he has ten days in which to request a hearing before the City Council. Organizational channels will be followed at all times. No individual council member will be approached at any time by the employee regarding his complaints.

"(d) No punitive action will be assessed against an employee for utilizing these procedures.

"(e) The employee may select anyone he desires to assist him in filing his appeals or to represent him at any hearing."

[2]"Resolution #6365

"RESOLVED, by the City Council of the City of Ontario that the Personnel Rules and Regulations shall be amended by adding a new subdivision to Rule X, Section 3, to be known as paragraph (1) which shall read as follows: "(1) Whenever an em-

ing to the city council. A hearing was held before the city council on October 1, 1968, at which time Mr. Hadley's request for reinstatement and back pay was denied.

Subsequently and on January 20, 1969, petitioner filed his original petition for writ of mandamus under Code of Civil Procedure section 1094.5. Following the filing of demurrers, a second petition for writ of mandate was filed April 3, 1969, and the respondent city filed its answer May 22, 1969. Trial was held July 6 and 7, 1970. A minute order denying a writ of mandate was entered July 8, 1970, but formal judgment was not entered until February 21, 1973. Timely notice of appeal was filed following the entry of said judgment.

### DISCUSSION

As noted above this administrative mandamus proceeding is governed by Code of Civil Procedure section 1094.5 which reads in pertinent parts as follows:

"(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. All or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. . . .

---

ployee has been given a permanent stationary rating by the Industrial Accident Commission of the State of California, return to the job must be based on the same medical information which the employee used in order to obtain the award. Unless these medical facts are very carefully considered, subsequent injuries or aggravations of the original injury can occur. It is the policy of the City that an employee return to duties he can perform safely without undue risk of further injury to himself or other employees.

"It is likewise the policy of the City that if he cannot do so, or if he is unable or unwilling to accept some other position which he is physically and otherwise qualified to perform, his employment be terminated.

"The medical criteria presented to the Industrial Accident Commission by the employee and his doctor shall be obtained and utilized by the City, and interpreted in terms of specific job restrictions and limitations. The Department Head shall then interpret and apply such job restrictions and limitations to the specific physical requirements of the employee's position and make a recommendation to the City Manager. A determination shall be made by the City Manager as to whether or not the employee shall: (1) Return to job. (2) Transfer to some other position for which he is qualified, based upon physical ability and experience. (3) Terminate his employment by the City."

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.

"(d) Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (e) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case."

At the time this cause was tried in the superior court matters of this kind were governed by the substantial evidence rule. Now if the decision of the local board (herein the city council) substantially affects a fundamental vested right the trial court must independently weigh the evidence. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 28]. This rule applies to all cases on appeal when *Strumsky* was decided.) ■ Under *Strumsky* and *Perea* v. *Fales* (1974) 39 Cal.App.3d 939 [114 Cal.Rptr. 808] the right of petitioner, who has passed his probationary status, to maintain his position as a uniformed police officer until removed for good cause was a fundamental vested right. Certainly this right was substantially affected. This case is therefore governed by the independent review of the evidence test.

It is to be noted that there are only two differences in the procedure contemplated under section 1094.5 between the two types of review. One is the manner of weighing the evidence. The other is the manner of considering evidence allowed to augment the record when such augmentation is proper. Under subdivision (d), under either method of review, augmentation *is proper in two* and only two cases: (1) where the evidence could not,

in the exercise of reasonable diligence, have been produced at the administrative hearing and (2) where relevant evidence was improperly excluded by the administrative agency.

■ It is not contemplated by the code provision that there should be a trial de novo before the court reviewing the administrative agency's action even under the independent review test. (See generally Netterville, *Judicial Review: The "Independent Judgment" Anomaly,* 44 Cal.L.Rev. 262.) Only where the record is augmented within the strict limits set forth is evidence on the main issues ever received at the trial. (Cal. Administrative Mandamus (Cont.Ed.Bar) p. 86.)

The rule against complete trials de novo is not altered by the fact that a full record of the administrative procedures was not kept. In such a case the parties may reconstruct the record as was done in *Chas. L. Harney, Inc.* v. *Board of Permit Appeals* (1961) 195 Cal.App.2d 442 [15 Cal.Rptr. 870] or if they are unable to do so, so that no record is available, a new hearing must be held with an adequate record. (*Aluisi* v. *County of Fresno* (1958) 159 Cal.App.2d 823, 828 [324 P.2d 920].)

■ Because this case must be reversed for reasons hereinafter stated it is not necessary to determine whether the action of the trial court herein in trying the case de novo instead of limiting consideration to only the evidence received before the administrative agency resulted in prejudicial error.

■ Under section 1094.5 an abuse of discretion is established not when the administrative agency's *action* is not supported by the weight of the evidence but rather when such agency's *"findings* are not supported by the weight of the evidence." (Italics added.) The section clearly imports a duty on the part of the administrative agency to make findings as a basis for judicial review. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12].) In that case the Supreme Court said:

"We further conclude that implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. If the Legislature had desired otherwise, it could have declared as a possible basis for issuing mandamus the absence of substantial evidence to support the administrative agency's action. By focusing, instead, upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency

traveled from evidence to action. In so doing, we believe that the Legislature must have contemplated that the agency would reveal this route. Reference, in section 1094.5, to the reviewing court's duty to compare the evidence and ultimate decision to '*the* findings' (italics added) we believe leaves no room for the conclusion that the Legislature would have been content to have a reviewing court speculate as to the administrative agency's basis for decision.

"Our ruling in this regard finds support in persuasive policy considerations. (See generally 2 Davis, Administrative Law Treatise (1958) § 16.05, pp. 444-449; Forkosch, A Treatise on Administrative Law (1956) § 253, pp. 458-464.) According to Professor Kenneth Culp Davis, the requirement that administrative agencies set forth findings to support their adjudicatory decisions stems primarily from judge-made law [citations omitted] and is 'remarkably uniform in both federal and state courts.' . . .

"Among other functions, a findings requirement serves to conduce the administrative body to draw legally relevant sub-conclusions supportive of its ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions. [Citations omitted.] In addition, findings enable the reviewing court to trace and examine the agency's mode of analysis. [Citations omitted.]

"Absent such roadsigns, a reviewing court would be forced into unguided and resource-consuming explorations; it would have to grope through the record to determine whether some combination of credible evidentiary items which supported some line of factual and legal conclusions supported the ultimate order or decision of the agency. Moreover, properly constituted findings enable the parties to the agency proceeding to determine whether and on what basis they should seek review. [Citations omitted.] They also serve a public relations function by helping to persuade the parties that administrative decision-making is careful, reasoned, and equitable." (11 Cal.3d 506, 515-517.)

We do not mean to hold that formal findings of fact, such as would be prepared by a court, must be entered. Findings may be formal or informal and may in some cases be contained in the order made. But where no findings, formal or informal, are made (and none were made in the case at bench) and where the action of the administrative agency may be on any one of several bases, failure to make findings is prejudicial and a writ of mandate will issue to require the agency to hold a new hearing

with appropriate findings. (*Mahoney* v. *San Francisco City etc. Employees' Ret. Bd.* (1973) 30 Cal.App.3d 1, 5-6 [106 Cal.Rptr. 94]; see also *Securities Comm'n* v. *Chenery Corp.* (1943) 318 U.S. 80, 94 [87 L.Ed. 626, 636-637, 63 S.Ct. 454].)

While both the *Topanga* and the *Mahoney* cases involve reviews under the substantial evidence test we quoted extensively from the former case to show that the same logic and reasons apply to cases involving the independent review test. We therefore apply both cases to the issues herein.

In the present case the city council's action of October 1, 1968, might have been based upon a finding that the chief of police was correct in the contention made in his letter of September 11, 1968, that the employee had not followed proper formal grievance procedure or it may have determined that the chief's action of January 11, 1968, in terminating the police officer standing of petitioner and reducing him to civilian status merely carried out the council's action of January 10, 1968, and that that council action was proper. In this latter case the council may have found its action of January 10, 1968, proper (1) upon a finding that it had the right to reduce petitioner to civilian status because of his physical condition even though this condition was the result of injury received in the scope and course of his employment, or (2) upon a finding that his physical condition kept petitioner from being able to perform his duties as a police officer and that condition was not caused by injuries received in the scope and course of his employment. Again the council may have felt, as the city manager apparently did, that under resolution No. 6365 the only evidence of physical condition that it could consider was that presented to the Workmen's Compensation Appeals Board and upon which that board based its 20½ percent permanent disability rating; or it may have considered all the medical testimony. Or there might have been some other basis for the council's actions which does not readily occur to us.

The difficulty is that without findings the reviewing court simply cannot determine the basis of the administrative action; and some of the bases suggested by the evidence would not support that action.

For example: the conclusion of the chief of police that petitioner did not follow proper grievance procedure is unsupported. All steps were followed by petitioner. While it is true that there was considerable delay between the action of the council on January 10 and the chief on January 11 and the filing of the "written statement outlining the complaint and the circumstances surrounding it" required as the first step of formal grievance procedure and

which was done by petitioner on September 3, no time limit is set for the filing of such statement. Even were a fixed time limit established it would have been tolled or extended for the period petitioner was seeking disability retirement pay from the state retirement system. (See *Anderson* v. *City of Los Angeles* (1973) 30 Cal.App.3d 219, 226 [106 Cal.Rptr. 299]; *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198]; and see *Elkins* v. *Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81].) Furthermore, a conclusion that petitioner could be reduced to civilian status if his inability to perform the functions of a police officer was the result of injuries received in the scope and course of employment would improperly deprive him of rights under Labor Code section 4850 and would be invalid under *Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393, 397 [99 Cal.Rptr. 38, 491 P.2d 830]. In passing it is to be noted that if the city manager is correct and the only evidence which can be considered by the city under resolution No. 6365 is the medical evidence presented before the Workmen's Compensation Appeals Board then there is no evidence that the petitioner's present dsability is due to anything except an accident which occurred in the scope and course of his employment.

If the reviewing court is not to be forced into these and other speculations concerning the city's action there is but one solution. The matter must be remanded to the city for another hearing followed by appropriate findings. At said hearing careful records should be kept as to all evidence received.

The judgment is therefore reversed and the matter is remanded to the trial court with instructions to issue a writ of mandate under Code of Civil Procedure section 1094.5 requiring respondent to hold a new hearing and make a new determination on petitioner's appeal and after such hearing to make appropriate findings in support of whatever order it may make on such hearing.

Gardner, P. J., and Kaufman, J., concurred.