[Civ. No. 46046. Second Dist., Div. Five. July 31, 1975.]

BOARD OF ADMINISTRATION, PUBLIC
EMPLOYEES' RETIREMENT SYSTEM, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
CITY OF SANTA MONICA et al., Real Parties in Interest.

## Counsel

Evelle J. Younger, Attorney General, Edward M. Belasco and Anne S. Pressman, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Richard L. Knickerbocker, City Attorney, Samuel I. Streichman, Assistant City Attorney, and Dennis T. Omoto, Deputy City Attorney, for Real Parties in Interest.

## Opinion

**LORING, J.**\*—This petition for writ of prohibition alleges that Board of Administration, Public Employees' Retirement System (Board) is a cross-defendant and respondent in two actions pending before respondent court entitled "Dennis V. Rozsa v. City of Santa Monica," No. 33189 and "City of Santa Monica v. Board of Administration of Public Employees' Retirement System," No. C 108897; that said actions involve questions regarding Board's decision refusing to grant disability retirement to Dennis V. Rozsa (Rozsa) [who had been employed by the City of Santa Monica (City) as a police officer]; that in the course of said two actions City submitted to Board 214 requests for admissions (attached thereto as Exhibit A); that over Board's objections respondent court ordered Board to answer 59 requests for admissions.

The 59 requests for admissions were numbered 73-75, 77-84, 86-93, 111-118, 120-127, 174-181, 182-189, 191-198, and are too voluminous to incorporate in this opinion. In essence they sought to compel Board to admit the physical and mental processes by which it and its individual members arrived at Board's ultimate decision, that all members of the Board read its staff report, that Board's executive officer prepared Board's decision, that Board's decision was prepared prior to the oral hearing, that Board's decision, prepared by the executive officer, was read by each board member individually prior to the oral hearing, that each individual board member did not read the hearing record in its entirety, that each member of the Board had a copy of the decision prepared by the executive officer before him during the oral hearing, that each individual board member did not read the prepared decision of Hearing Officer Leon B. Traub before the oral hearing, that each individual board member did not read or *consider* any medical report of

---

*Assigned by the Chairman of the Judicial Council.

Dr. Louis Lemsky before the said hearing or the medical report or testimony of Dr. Morton D. Kritzer or the findings and award of the Workmen's Compensation Appeals Board prior to the oral hearing. Respondent court struck the words "or consider" from each interrogatory which included such words.

Board contends that respondent court acted in excess of jurisdiction. We issued a stay order and an alternative writ of prohibition. City answered, admitting the material allegations of the petition[1] except that it denied that respondent court acted in excess of jurisdiction. City alleges as affirmative defenses, inter alia, that any error which respondent court committed was not jurisdictional and that Board has an adequate remedy by appeal from any final judgment.

## CONTENTIONS

Petitioner contends that:

Respondent superior court was without jurisdiction to compel Board to disclose by admissions or otherwise how it and its individual members arrived at Board's ultimate decision.

## FACTS

City's answer incorporates a copy of the proposed decision of Leon B. Traub, hearing officer, Office of Administrative Hearings, dated June 21, 1974 (Exhibit B) and a copy of Board's decision denying the "applications of Respondents" for the disability retirement of Rozsa (Exhibit D).[2] These documents indicate Rozsa was employed by City as a "local safety member" under the Public Employees' Retirement System during the period May 1, 1949, to June 24, 1968, that on October 19, 1964, Rozsa filed an application for industrial disability retirement based upon an alleged injury which occurred August 19, 1957, the application was denied, an appeal was taken from the denial, the appeal was dismissed on January 21, 1968, because "Rozsa returned to work on March 5, 1966," (sic 1965)[3] that Rozsa allegedly "reinjured his cervical spine and

---

[1]City has incorporated in its answer a great many documents from the record which are not disputed by petitioner.

[2]This latter document reads as if it were a denial of a petition for reconsideration, since it refers to an earlier decision which had become final before the petition for reconsideration was filed. The record does not appear to include the earlier decision, if any.

[3]This is quoted from the proposed decision by Leon B. Traub. The date 1966 would appear to be typographical.

left upper arm and shoulder on July 5, 1965, March 19, 1966, and May 19, 1966" while performing duties as a police officer, that Rozsa became nervous and "it became common for him to lose his calm." On May 22, 1968, a police surgeon discovered that Rozsa was suffering from high blood pressure—180/110, Rozsa's last day of work was June 29, 1968, that on February 13, 1969, City applied under Government Code section 21023 for disability retirement for Rozsa. The application was denied, from which denial Rozsa appealed; the hearing officer's proposed decision denied Rozsa's appeal, Board adopted the proposed decision and denied Rozsa's appeal. Rozsa petitioned for a reconsideration one day after Board's power to grant reconsideration had expired. On June 21, 1971, Rozsa again applied to Board for disability retirement. On August 12, 1971, the Board refused to consider the application filed June 21, 1971, because it had denied the original application December 12, 1969. On August 4, 1972, City reinstated Rozsa to his position as of August 5, 1969, in reliance on the decision of the Supreme Court in *Boyd* v. *City of Santa Ana,* 6 Cal.3d 393 [99 Cal.Rptr. 38, 491 P.2d 830], and notified the retirement system that Rozsa was an employee of City on leave of absence without pay. On January 14 and 16, Rozsa and City, pursuant to instructions from Board's executive officers dated December 17, 1973, filed notices of appeal from the decision of August 12, 1971, denying the application of June 21, 1971; on June 21, 1974, the hearing officer found that Rozsa was permanently disabled as of June 24, 1968, that City's attacks on the decision of the retirement system dated December 12, 1969, could be sustained and said judgment vacated because of extrinsic mistake of fact (citing authority) and negligence of an attorney (citing authority). The hearing officer granted City's application for disability retirement of Rozsa *nunc pro tunc* as of June 25, 1968.

By decision dated October 16, 1974, Board [in effect] refused to follow Hearing Officer Traub's decision but concluded that its decision of December 12, 1969, determined that Rozsa was not disabled for retirement purposes, that that decision was legally final, that applications by City and Rozsa subsequent to December 12, 1969, were denied.

City now seeks to examine Board by way of requests for admissions in an effort to determine how Board and its individual members arrived at such decision and what documents, reports and records were considered by Board and its individual members in arriving at that decision. In effect City contends that Board and its members merely adopted the decision prepared by its executive officer prior to the oral hearing on October 16, 1974. Although City does not express its position in these

precise terms, in ultimate effect City contends that Board did not exercise its own independent judgment but merely "rubber stamped" the decision of its executive officer.

## DISCUSSION

The ultimate question involved in this proceeding is whether or not a court, in reviewing the decision of an administrative agency, may inquire into the physical and mental processes by which the agency and its members arrived at the decision. The answer is in the negative. We might well rest this decision on principles governing the separation of powers between the executive and judicial branches. But it is unnecessary to do so because the course of investigation which City proposed to pursue would have been improper if Board had been a full-fledged judicial body. The law is firmly established that if the *decision* is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the decision was reached. The superior court was called upon to review the *action* of Board, not the *reasons* for the action or the *process* by which the Board or its individual members reached its conclusion. There can be no prejudicial error from erroneous logic or reasoning or the process by which the result is achieved if the decision itself is correct. In speaking of the decisions of a superior court, the Supreme Court in *Davey* v. *Southern Pacific Co.,* 116 Cal. 325, said at page 329 [48 P. 117]: ". . . No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion."

In *El Centro Grain Co.* v. *Bank of Italy,* 123 Cal.App. 564 at page 567 [11 P.2d 650], the court said: "It is judicial *action* and not judicial *reasoning* which is the subject of review." (Italics ours.)

In *Niles Sand &' Gravel Co.* v. *Alameda County Water Dist.,* 37 Cal.App.3d 924, 936 (fn. 12) [112 Cal.Rptr. 846], the court said: "Appellants pointed out at oral argument that the trial court had not viewed the situation as permitting invocation of the police-powers theory. Their observation is correct: the theory is not expressed in the

court's findings or conclusions (quoted *supra*), and the trial judge apparently disavowed it in his 'Memorandum Decision.' (See fn. 10, *ante.*) However, the judge's view is not binding on appeal: accepting respondent district's argument based upon its police powers, we may cite it in support of the judgment under the familiar rule that we may affirm the latter, upon any valid ground appearing, even if we disagree with the trial court's reasons for arriving at it. . . ."

If the reasons for a decision are irrelevant and immaterial (even when they may appear in the record), we think the physical process as disclosed by facts outside the record by which the result was reached is even more so. In our view the same reasoning applies to a decision reached by an administrative body. We are not here concerned with any question of a corrupt decision—one which was the product of bribery or other improper influence. We are here concerned with a question of whether or not the officials charged with making a decision did or did not consider certain documents, whether they formed their opinion before they heard oral argument, whether they physically wrote their opinion or whether it was written for them by their executive officer.

■ "It is presumed that official duty has been regularly performed. . . ." (Evid. Code, § 664.) This presumption applies to the decision of an administrative board. (*Cooper* v. *State Board of Public Health,* 102 Cal.App.2d 926, 931 [229 P.2d 27].) Although this presumption is disputable (*Le Strange* v. *Berkeley,* 210 Cal.App.2d 313 [26 Cal.Rptr. 550]), it may not be disputed by proof that the Board's trained personnel advised and assisted the Board (by drafting a proposed decision or otherwise) if the Board itself makes the actual decision. (*Chosick* v. *Reilly,* 125 Cal.App.2d 334, 338 [270 P.2d 547].) In *County of Los Angeles* v. *Superior Court (Burroughs)* 13 Cal.3d 721 [119 Cal.Rptr. 631, 532 P.2d 495], a plaintiff in a taxpayer's action sought to enjoin the implementation of a county ordinance and attempted to take the deposition of the members of the board of supervisors in an effort to determine the mental process by which they decided to enact the ordinance and the contents of discussions (in executive sessions) between the members of the Board and the county's labor negotiators. The Board members refused to answer and the trial court ordered the deponents to answer. The Supreme Court reversed. After discussing the question of conditional privilege for official information as set forth in Evidence Code section

1040, the Supreme Court declared that members of legislative bodies could not be interrogated regarding the reason or process by which they decided to enact legislation.[4]

[4]The court said (pp. 726-728):

"In our view, however, we need not resolve these conflicting claims as to the proper application of section 1040, for we believe that the discovery order in the instant case implicates a more fundamental, historically enshrined legal principle that precludes any judicially authorized inquiry into the subjective motives or mental processes of legislators. As early as 1855, Chief Justice Murray declared in an opinion for this court: 'I know of no authority this Court possesses to inquire into the motives of the Legislature in the passage of any law; on the contrary, it has been uniformly held, that they could not be inquired into.' (*People* v. *Bigler* (1855) 5 Cal. 23, 26.) This doctrine has been reiterated in literally scores of California decisions. (See, e.g., *People* v. *County of Glenn* (1893) 100 Cal. 419, 423 [35 P. 302] ('[T]he motives which induced legislative action are not a subject of judicial inquiry'); *Hadacheck* v. *Alexander* (1915) 169 Cal. 616, 617 [147 P. 259] ('It is . . . the general, if not the universal, rule that the motive of the legislator may not be inquired into.').)

"As Justice Field wrote for the United States Supreme Court in *Soon Hing* v. *Crowley* (1885) 113 U.S. 703, 710-711 [28 L.Ed. 1145, 1147, 5 S.Ct. 730]: '[T]he rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments. Their motives, considered as the moral inducement for their votes, will vary with the different members of the legislative body. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile.'

"Moreover, the authorities, both in California and more generally, make clear that the rule barring judicial probing of lawmakers' motivations applies to local legislators as well as to members of the state Legislature or of Congress. (See, e.g., *Nickerson* v. *San Bernardino* (1918) 179 Cal. 518, 522-524 [177 P. 465]; *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 894-895 [264 P.2d 932]; *People* v. *City of Palm Springs* (1958) 51 Cal.2d 38, 46-47 [331 P.2d 4]; 5 McQuillin, Municipal Corporations (3d ed. 1969) § 16.90. pp. 287-290.) [Fn. omitted.]

"On one level, the doctrine which precludes judicial delving into the subjective mental processes of individual legislators is a corollary of the related legal principle which establishes that the validity of a legislative act does not depend on the subjective motivation of its draftsmen but rests instead on the objective effect of the legislative terms. Thus, on many occasions this court has declared: ' ". . . [A] judiciary must judge by results, not by the varied factors which may have determined legislators' votes . . . " ' (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 364 [55 Cal.Rptr. 23, 420 P.2d 735]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 129 [216 P.2d 825, 13 A.L.R.2d 252].) As the United States Supreme Court has emphasized: 'It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. . . . "The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." [Citation.]' (*United States* v. *O'Brien* (1968) 391 U.S. 367, 383 [20 L.Ed.2d 672, 683, 88 S.Ct. 1673].) [Fn. omitted.] Given this general rule that the validity of legislation does not turn on legislative motive, the mental processes of individual legislators become irrelevant to the judicial task; hence, we do not peer into these subjective realms."

The taxpayer contended that this rule did not apply where the ordinance was adopted under duress from an illegal strike. In reply the Supreme Court said that that alleged fact did not create an exception to the rule.[5]

In conclusion the court said (at p. 731): "Professor Bickel has captured the essence of the policies underlying the judicial principle which we apply in this case. 'It is simply unthinkable,' Professor Bickel has written, 'that members of legislative majorities should from time to time be subject to cross-examination in various courts over the country regarding their state of mind when they voted. *That is no more representative government than it would be judicial process for judges to be subject to cross-examination by legislative committees about their state of mind in deciding cases.* It seems almost anticlimactic to add that legislatures whose members were subject to call for testimony in this fashion would be hard put to find the time to legislate.' (Bickel, The Least Dangerous Branch (1962) p. 215.)" (Italics ours.)

Although the Supreme Court did not use the precise words, obviously one of the bases for the rule which it recognized is the doctrine of separation of powers. The members of the legislative branch and executive branch are no more subject to examination in the judicial branch to justify or explain their official decisions than a member of the judicial branch would be subject to examination by the Governor or Legislature regarding his decisions.

In the recent case of *City of Fairfield* v. *Superior Court (Anderson)* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375], wherein Commercial sought to take the deposition of members of a city council claiming the denial of a fair hearing when the council denied a use permit, the Supreme Court said: "Commercial is entitled to an *independent* judicial determination of the issue of whether it received a fair administrative hearing. . . . But this independent review is not a 'trial de novo' as Commercial uses that term; instead the court renders its independent

---

[5]The Supreme Court said (p. 729): "We need not resolve the merits of the taxpayer's cause of action at this pretrial discovery stage, however, for even if we assume that the ordinance at issue could be invalidated if it resulted from the threat of an illegal strike, the authorities make clear that the taxpayer still is not entitled to directly question the legislators as to their mental processes or their reasons for enacting the ordinance. In other words, even assuming that the ulterior purpose behind the enactment *is* relevant to the ordinance's validity, the taxpayer still may not prove such ulterior purpose by requiring legislators to testify about their reasoning process or by questioning others about the factors which may have led to the legislators' votes. Even under such circumstances, the principle barring judicially authorized inquiry of legislators' motivation remains intact."

judgment on the basis of the administrative record plus such additional evidence admitted under section 1094.5, subdivision (d)."

As was said in *Strumsky* v. *San Diego County Employees' Retirement Association,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the decision of an administrative body acting in a quasi-judicial capacity is entitled "to all the deference and respect due a judicial decision."

In *State of California* v. *Superior Court,* 16 Cal.App.3d 87, 94 [93 Cal.Rptr. 663], the court said: "Most of the questions sought to be asked by respondent in the discovery proceeding deal with the mental processes of the director of health care services in arriving at his decision. It is very doubtful if, even assuming that post-administrative hearing discovery would lie, such questions are proper, any more than it would be proper to seek to learn the mental processes by which a judge arrives at his decisions. (See *United States* v. *Morgan* (1941) 313 U.S. 409, 422 [85 L.Ed. 1429, 1435, 61 S.Ct. 999]; *Chicago B. & Q.R. Co.* v. *Babcock* (1907) 204 U.S. 585 [51 L.Ed. 636, 27 S.Ct. 326].) However, in view of our decision that discovery will not lie here, it is unnecessary for us to consider the matter further."

See also, *State of California* v. *Superior Court,* 12 Cal.3d 237, 257 [115 Cal.Rptr. 497, 524 P.2d 1281], where the court said: "We agree that in reviewing the Commission's determination the trial court is confined to the record before the Commission unless Veta can show that it possesses evidence not presented to the Commission which it could not have produced in the exercise of reasonable diligence or unless relevant evidence was improperly excluded at the administrative hearing."

See also *Transcentury Properties, Inc.* v. *State of California,* 41 Cal.App.3d 835 [116 Cal.Rptr. 487], where plaintiff sought depositions from staff members of the coastal commission and the court at page 843 said: ". . . the court must be mindful of the prohibition against probing the mental processes of commission and staff members."

 We conclude that Board is not subject to examination regarding the basis for and process by which it reached its decision any more than a trial judge would be subject to such examination by an appellate court[6] or a trial judge would be subject to such examination by a losing litigant.

[6]Or we might add: any more than an appellate justice may be examined by a disgruntled losing litigant regarding the basis of an appellate decision.

■ Lastly we consider City's contention that prohibition is not a proper remedy inasmuch as Board has an adequate remedy by appeal from any judgment. Appeal is not an adequate remedy since if Board foregoes the right to review by prohibition it is left with the choice of supplying information to which City is clearly not entitled or suffering the risk of a default judgment on a debatable point of law. Board is entitled to a legal answer on the issue before it is compelled to make that choice. (*City & County of S. F.* v. *Superior Court,* 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294].)

Let a peremptory writ of prohibition issue, restraining respondent court from enforcing its certain order dated February 27, 1975, directing Board to answer City's request for admissions numbers 73-75, 77-84, 86-93, 111-118, 120-127, 174-181, 182-189 and 191-198, and directing respondent to take such further action as may be consistent with the views expressed herein.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied August 26, 1975, and the petition of the real party in interest City of Santa Monica for a hearing by the Supreme Court was denied October 9, 1975.