CLARENCE WILLIAM SPEER AND SUSAN M. SPEER,
PETITIONERS *v*. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 581–12.             Filed April 16, 2015.

P–H, a retired Los Angeles Police Department detective, failed to report as gross income payments that, on his retirement, he received from the department cashing out his unused vacation time and sick leave (leave payments). Ps argue that some portions of P–H's unused vacation time and sick leave accrued when he was on temporary disability leave from the department pursuant to sec. 4.177 of the Los Angeles Administrative Code, which, in part, provides that a temporarily disabled member of the Police Department shall receive as temporary disability compensation "an amount equal to his base salary". Ps argue that at least some portions of the leave payments are excludable from gross income under I.R.C. sec. 104(a)(1) as amounts received under a workmen's compensation act as compensation for personal injuries or sickness. *Held*: The leave payments were not received under a workmen's compensation act as compensation for personal injuries or sickness and, therefore, no portion is excludable under I.R.C. sec. 104(a)(1).

Clarence William Speer and Susan M. Speer, pro sese.
*Jonathan N. Kalinski*, for respondent.

HALPERN, *Judge*: Respondent determined deficiencies of $14,832 and $68,179 in petitioners' 2008 and 2009 Federal income tax, respectively. The only issue remaining for deci-

sion is whether petitioners may exclude from their 2009 gross income as workmen's compensation a lump-sum payment that petitioner husband (Mr. Speer) received on account of unused vacation time and sick leave. All other issues have been settled or are merely computational.

Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for 2009. All dollar amounts and numbers of hours have been rounded to the nearest dollar or whole hour.

### FINDINGS OF FACT

The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and the documents stipulated are accepted as authentic.

Petitioners resided in California when they filed the petition.

In 2009, Mr. Speer retired from his job as a detective employed by the Los Angeles Police Department (LAPD). During his decades-long service to the LAPD, Mr. Speer was granted periods of temporary disability leave on account of duty-related injuries or sickness. The first of those periods was in 1982, and the last was in 2007. On his retirement from the LAPD in 2009, the City of Los Angeles (City) paid to Mr. Speer $30,773 for 541 hours of unused vacation time and $22,740 for 800 hours of unused sick leave (together, leave payments). The leave payments (totaling $53,513) were included in the amount of wages reported by the City to Mr. Speer on a 2009 Form W–2, Wage and Tax Statement. Petitioners made a joint return of income for 2009 on Form 1040, U.S. Individual Income Tax Return. They did not include the leave payments in the income that they reported. In an attachment to the Form 1040, petitioners explained that they were excluding the leave payments from income on the ground that they had been received under a workmen's compensation act. They identified Cal. Lab. Code sec. 4850 (West 2011) as a workmen's compensation act. Cal. Lab. Code sec. 4850 provides certain police officers, firefighters, sheriff's officers, and other personnel a leave of absence with salary for a period of up to one year in lieu of temporary disability or maintenance payments ordinarily payable under California's Workers' Compensation Act. The parties now agree that Cal.

Lab. Code sec. 4850 was inapplicable to Mr. Speer during his years of service with the LAPD and that when, during those years, he was on temporary disability leave, the provision of law governing his compensation was section 4.177 of the Los Angeles Administrative Code (LAAC). LAAC sec. 4.177 is entitled "Compensation to Be Paid to Members of the Fire Department and Police Department Who Are Disabled in the Performance of Their Duties."[1] Subsection (a) thereof deals with temporary disability and provides:

> Any member of the Fire Department or Police Department who is temporarily disabled by reason of illness or injury proximately caused by, arising out of, and in the course and scope of his employment, shall receive as temporary disability compensation (Division IV of the Labor Code of the State of California) an amount equal to his base salary less the sum that would be deducted therefrom pursuant to Section 4.2014 of this Code or Charter Sections 1324, 1420, 1514, or 1614, as applicable, if he were actively performing his duties. Provided, however, that in no event shall any member of the Fire Department or Police Department receive any temporary disability compensation pursuant to this subsection after he has been granted a pension, or for a period longer than one (1) year. In the event that the member is temporarily disabled and prevented by such temporary disability from returning to duty at the expiration of one (1) year, and said member has not been granted a pension prior to that time, he shall then receive temporary disability compensation at the rate provided in Division IV of the Labor Code of the State of California.

When Mr. Speer retired in 2009, his entitlement to pay and benefits was governed by Memorandum of Understanding No. 24 (MOU 24) between the City and the Los Angeles Police Protective League.[2] MOU 24 is a collective bargaining agreement, and the league is the recognized bar-

---

[1] We found Los Angeles Administrative Code sec. 4.177 at http://www.amlegal.com/library/ca/losangeles.shtml (follow "Charter and Administrative Code" hyperlink; then expand "ADMINISTRATIVE CODE" menu; then expand "DIVISION 4 EMPLOYMENT - GENERAL" menu; then expand "CHAPTER 3 SALARY STANDARDIZATION FOR FIREFIGHTERS AND POLICEMEN" menu; then expand "ARTICLE 6 VACATIONS, LEAVES" menu; then follow "Sec. 4.177. Compensation to Be Paid to Members of the Fire Department and Police Department Who Are Disabled in the Performance of Their Duties" hyperlink) (last visited Mar. 1, 2015).

[2] We found Memorandum of Understanding No. 24 (entered into Oct. 29, 2009) at http://cao.lacity.org/MOUs/MOU24–11.pdf (last visited Mar. 1, 2015).

gaining organization representing Los Angeles police officers from the rank of police officer to lieutenant.[3] Section 7.0 of MOU 24, entitled "Benefits", is divided into 18 articles. Article 7.1 addresses vacations and vacation pay. Article 7.1.A establishes the employee's entitlement to vacations with full pay. Article 7.1.B establishes the right to accumulate unused vacation time. Article 7.1.E addresses payments for unused vacation time on termination of service. It provides:

> In the event any employee, after the completion of the employee's initial year of service, becomes separated from the service of the Department by reason of resignation, discharge, retirement, death, or for any other reason, cash payment of a sum equal to all earned, but unused vacation, including vacation for the proportionate part of the year in which the separation takes place, shall be made at the salary rate current at the date of the separation to the employee * * *

Article 7.4 addresses the accrual of sick leave and establishes the employee's right to sick leave with full pay. Article 7.5 addresses sick leave use. Article 7.6.A addresses accumulated sick leave, establishing the right to carry unused sick leave over from year to year. Article 7.6.B addresses payments for unused sick leave on termination of service. In pertinent part, it states: "If any employee becomes separated from the service of the Department by reasons of retirement or death, any balance of accumulated sick leave at full pay remaining unused at the time of separation shall be compensated to the employee * * * by cash payment of 50% of the employee's salary rate current at such date of separation."

Amerika Tagaloa is a payroll supervisor employed by the LAPD. Respondent called him as a witness, and he testified as to certain aspects of the LAPD payroll system. On the basis of his testimony, we make the following findings. Of the 541 hours of vacation time that Mr. Speer had accumulated at the time of his retirement in 2009, 400 hours had carried over to 2009 from 2008 and the remainder, 141 hours, was earned in 2009. Four hundred hours of vacation time is the maximum that an employee can carry from one year to the next. Mr. Speer earned 96 hours of sick leave a year. The 800 hours of sick leave that he had accumulated at the time of his retirement is the maximum balance that an employee can

---

[3] *See* http://lapd.com/about/history/ (last visited Mar. 1, 2015).

accumulate. An employee is paid for any sick leave accrued in excess of 800 hours. Mr. Speer earned vacation and sick leave during periods of both active service and temporary disability. While on temporary disability leave, Mr. Speer could not take vacation time or sick leave.

OPINION

I. *Introduction*

Gross income means all income from whatever source derived, including, but not limited to, compensation for services. Sec. 61(a). Lump-sum payments received by an employee for accrued vacation and sick leave are compensation for services and therefore gross income. *See Acquisto v. Commissioner*, T.C. Memo. 1991–293 (holding lump-sum payment for unused sick leave immediately taxable in full as compensation), *aff'd without published opinion*, 972 F.2d 1349 (11th Cir. 1992); *Davis v. Commissioner*, T.C. Memo. 1979–478 (holding lump-sum payment for accrued annual leave taxable in full as compensation). With an exception not here relevant, section 104(a)(1) provides that gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". Section 1.104–1(b), Income Tax Regs., provides that the exclusion includes amounts received under "a statute in the nature of a workmen's compensation act".

California's general scheme for workmen's compensation is provided by Division IV of the California Labor Code, entitled "Workers' [formerly Workmen's] Compensation and Insurance" (Workers' Compensation Act). Cal. Lab. Code div. 4 (West 2011). LAAC sec. 4.177 discharges the obligations of the City under the Workers' Compensation Act to members of its fire and police departments who are either temporarily or permanently disabled by reason of duty-connected illness or injury. *See Radesky v. City of Los Angeles*, 112 Cal. Rptr. 444, 447 (Ct. App. 1974). Cal. Lab. Code sec. 4850 provides disability compensation similar to that provided in LAAC sec. 4.177, but, during Mr. Speer's employment by the LAPD, it did not apply to LAPD officers. *See* Cal. Lab. Code sec. 4850 (West 2003) (amended by Stats. 2009, c. 389 (A.B. 1227), sec. 1, effective in January 2010, which removed a pension

requirement that previously excluded LAPD officers). The City drafted LAAC sec. 4.177 in order to provide LAPD officers and City firefighters with similar disability compensation. *See Radesky*, 112 Cal. Rptr. at 448. Respondent concedes, and we agree, that Cal. Lab. Code sec. 4850 is a statute in the nature of a workmen's compensation act. *See Givens v. Commissioner*, 90 T.C. 1145, 1148 n.9 (1988) (apparently accepting that Cal. Lab. Code sec. 4850 is a statute in the nature of a workmen's compensation act); *see also* Rev. Rul. 68–10, 1968–1 C.B. 50 (holding that payments made under Cal. Lab. Code sec. 4850 because of an occupational injury or illness are in the nature of and in lieu of workmen's compensation and excludable under section 104(a)(1)). Given the similarity between Cal. Lab. Code sec. 4850 and LAAC sec. 4.177, we conclude that the latter is equally a statute in the nature of a workmen's compensation act (hereafter, simply, workmen's compensation act).

Cal. Lab. Code sec. 4850(a) entitles a covered employee to a disability leave of absence "without loss of salary". That phrase has been interpreted to mean that, during that absence, the employee continues to accrue benefits such as vacation time and sick leave. *See Austin v. City of Santa Monica*, 44 Cal. Rptr. 857, 861 (Dist. Ct. App. 1965) ("The word 'salary' as used in section 4850, must be understood as encompassing the entire compensation to which the employee is entitled[.]"). Given (1) the stated similarity in purpose between LAAC sec. 4.177 and Cal. Lab. Code sec. 4850 and (2) Mr. Tagaloa's testimony that Mr. Speer earned vacation time and sick leave during periods of both active service and temporary disability, we conclude that the "amount equal to his base salary" provided for in LAAC sec. 4.177 likewise includes the accrual of vacation time and sick leave.

The question we must address is not whether Mr. Speer's accrual of vacation time and sick leave when he was temporarily absent from work on disability leave gave rise to income for those years (it did not) but whether the payments that he received on cashing out his leave balances in 2009 were received by him pursuant to a workmen's compensation act as compensation for personal injuries or sickness. We agree with respondent that they were not. They are, therefore, not excludable from petitioners' 2009 gross income under section 104(a)(1).

## II. *The Parties' Arguments*

Petitioners' principal argument is that, to the extent that the leave payments can be allocated to vacation and sick leave benefits earned while Mr. Speer was on temporary disability leave pursuant to LAAC sec. 4.177, those portions of the leave payments must be excluded from their 2009 gross income under section 104(a)(1) as amounts received under a workmen's compensation act on account of personal injuries or sickness. [4]

Respondent's principal argument is that Mr. Speer received the leave payments not pursuant to LAAC sec. 4.177, a workmen's compensation act, but, rather, pursuant to MOU 24, which is not a workmen's compensation act. Respondent further argues that, if the Court determines that payments in the nature of the leave payments could have been paid pursuant to a workmen's compensation act (and could, therefore, be excludable pursuant to section 104(a)(1)), petitioners have not substantiated how many hours, if any, were accrued during Mr. Speer's disability leaves of absence or, if so accrued, how many remained unused at the time of Mr. Speer's retirement.

## III. *Discussion*

### A. *Compensation for Personal Injuries or Sickness*

A plain reading of LAAC sec. 4.177 demonstrates that it does not establish the salary of an employee (covered employee) whose salary is continued pursuant to that provision while the employee is absent from work on a disability leave of absence. There is little authority interpreting LAAC sec. 4.177, but, given its similarity to Cal. Lab. Code sec. 4850, we believe that authority interpreting the latter section may be equally applied to the former. In *Campbell v. City of Monrovia*, 148 Cal. Rptr. 679, 684 (Ct. App. 1978), the court

---

[4] On brief, petitioners apparently concede that not all of the $53,513 of leave payments is allocable to benefits earned while Mr. Speer was on temporary disability leave. They claim that 422 out of Mr. Speer's retirement-date balance of 541 vacation hours were earned when he was on such leave, which they calculate results in an exclusion of $23,979. They also claim that 207 out of his retirement-date balance of 800 sick leave hours were earned during those leaves, which results in an exclusion of $16,925 (the two amounts totaling $40,904). Since we allow them no exclusion, we need not be concerned with petitioners' computations.

of appeal stated: "[Cal. Lab. Code sec. 4850] says no more than that during the period of disability of a member as defined in the section there shall be no loss of salary (including sick leave benefits), but it does not create the salary or any other benefit, nor purport to continue entitlement to any benefit beyond the period of disability it defines." In *Boyd v. City of Santa Ana*, 491 P.2d 830, 832 (Cal. 1971), the Supreme Court of California held: "Payments pursuant to section 4850 are not salary but workmen's compensation benefits." It found that the purpose of the provision was to continue a covered employee's salary during the hiatus between the disability onset and the employee's disability retirement (or, we assume, some other event terminating his leave of absence). *Id.* at 832–833. Lower California courts have made clear that payments pursuant to the provision are not remuneration for work done but, rather, indemnification for injury or sickness. *See, e.g.*, *Hawthorn v. City of Beverly Hills*, 245 P.2d 352, 355 (Cal. Dist. Ct. App. 1952). That court held: "Wages and salary may, under some circumstances, be paid as compensation in lieu of the normal temporary disability payments prescribed by the [Workmen's Compensation] Act. Such payments do not constitute salary or gratuities, but are payments of compensation under the Act." *Id.* (fn. ref. omitted). It concluded: "The payment required by section 4850 is not salary as such; it is compensation for injury received * * *. It is in place of the normal temporary disability allowance under * * * [the Act]." *Id.* at 356.

During each of his disability leaves of absence, Mr. Speer received periodic payments of his base salary and he accrued fringe benefits, such as vacation time and sick leave, that would translate into additional payments to him only *after* his disability leave of absence ended. Indeed, if a covered employee were to forgo the vacation time and the sick leave accrued during a disability leave of absence (as Mr. Speer claims he did), decades might pass until the employee retired and cashed out the forgone benefits. Mr. Speer's accrual of vacation time and sick leave while on temporary disability leave did not provide him with an immediate benefit that he could use to support himself while on such leave. The fringe benefit represented by the accrual was, thus, fundamentally different from the normal temporary disability allowance

payable under the Workers' Compensation Act and for which the continuation of his base salary under LAAC sec. 4.177 substituted. *See id.* The Workers' Compensation Act does not provide for any payments after the period of disability ends and, in fact, instructs that payments shall stop or be amended upon a finding that the disability has terminated or been diminished. *See* Cal. Lab. Code sec. 5803 (West 2011); *Sogov v. Indus. Accident Comm'n*, 9 P.2d 592, 593 (Cal. Dist. Ct. App. 1932) (sustaining a finding that disability terminated on specified date and so compensation also terminated as of that same date). Thus, any payments Mr. Speer received after his temporary disability ended cannot be part of the City's substitute for the Workers' Compensation Act.

Petitioners place great weight on our report in *Givens v. Commissioner*, 90 T.C. 1145. In *Givens*, a Los Angeles County deputy sheriff was injured in the course of his duties and was on disability leave for more than a year. The Los Angeles County Code set forth a workmen's compensation system that incorporated Cal. Lab. Code sec. 4850 for those eligible and provided additional compensation after expiration of the first year of disability. Specifically, it provided that the deputy would receive payments out of his accumulated sick leave. We held those payments to be excludable from gross income under section 104(a)(1). *Givens* is distinguishable. In *Givens*, we found that the county had adopted a comprehensive workmen's compensation scheme incorporating not only the provisions of Cal. Lab. Code sec. 4850 but also sick leave provisions provided for in the Los Angeles County Code. Petitioners have failed to show that the sick and vacation leave cashout provisions in MOU 24 were part of a comprehensive workmen's compensation scheme covering Mr. Speer.

Finally, we point out that, in determining whether income is excludable under section 104(a)(1), the treatment of one benefit in the nature of workmen's compensation does not control the treatment of a separate and distinct benefit that may be payable under the same statutory scheme. In *Allison v. Commissioner*, T.C. Memo. 1986–346, we addressed "salary continuation payments" made to an employee under the Federal Employees' Compensation Act (FECA), 5 U.S.C. secs. 8101–8193 (1982). In addition to other payments, FECA provides for the continuation of an employee's salary for a

period of 45 days commencing on the date the employee files a claim involving an occupational injury. FECA appeared to us to be a statute in the nature of a workmen's compensation act, but we found the payments at issue to be for the delay that usually preceded the commencement of disability payments and not for the disability itself. We held the payments did not qualify for exclusion from the taxpayer's gross income pursuant to section 104(a)(1). Likewise, we conclude that the leave payments, which compensated Mr. Speer for his failure to take the vacation with pay that he had earned or the sick leave that similarly he had earned (even if in part traceable to benefits accrued during periods of disability leaves of absence), were not paid as workmen's compensation under the Workers' Compensation Act and are not excludable from petitioners' gross income pursuant to section 104(a)(1).

B. *Substantiation*

Even were we to hold that lump-sum payments for unused vacation and sick leave accrued by an employee pursuant to MOU 24 could be payments under a workmen's compensation act for personal injuries or sickness, petitioners have failed to show how many hours, if any, Mr. Speer accumulated during his disability leaves of absence and how many of those hours remained when he retired in 2009.

Petitioners argue that at least a portion of the 541 hours of unused vacation leave and a portion of the 800 hours of unused sick leave Mr. Speer had when he retired were accrued during his disability leaves of absence. Petitioners have not presented any evidence that clearly shows how many hours, if any, he accrued during those absences. Officers are limited to 800 hours of sick leave and are paid for any additional accrued sick leave. In order to determine whether on retirement Mr. Speer had accrued but unused leave from periods of temporary disability we would need to know his entire sick leave history. The record is devoid of this information, and it is therefore impossible to determine whether any of the 800 hours were accrued during periods of disability leave.

Petitioners similarly cannot demonstrate that any of the 541 hours of unused vacation leave were accrued during his leaves of absence. Officers are limited to banking 200 hours of vacation leave per year and a total of 400. Mr. Speer had

541 hours of vacation leave at retirement because he had not yet lost vacation leave accrued during 2009. Just as with the sick leave, we would need to know Mr. Speer's vacation history in order to determine whether any of the unused leave was accrued during his leaves of absence. Again, the record does not contain this information. [5]

---

[5] In their seriatim reply brief, petitioners ask that we reopen the record and accord them additional trial time to offer evidence obtained from the LAPD concerning Mr. Speer's accumulation of vacation time and sick leave. At trial, petitioners offered a document (Exhibit 5–P) that Mr. Speer stated he received from the LAPD showing periods of disability, vacation hours earned during those periods, and sick time accrued during various years. In offering Exhibit 5–P, Mr. Speer conceded: "I'm not sure, to be honest, that it's accurate for the amount of time." We sustained respondent's objection to the exhibit on evidentiary grounds (lack of a showing of authenticity and inadmissible hearsay) and on the grounds that it had been neither stipulated nor provided to respondent 14 days in advance of trial, as provided for by our standing pretrial order (so that respondent would have time to investigate it). Petitioners again ask us to receive Exhibit 5–P and also an exhibit (Exhibit 1) that they attached to their seriatim opening brief but that we detached and returned to them as an improper document in the nature of evidence. Petitioners describe Exhibit 1 in that brief as containing "a letter from Laura Luna, police administrator, and charts reflecting sick time and vacation time accrued while petitioner, Mr. Speer, was on disability during various periods from 1982 through 2007 and paid to petitioner, Mr. Speer, upon his retirement in 2009."

Petitioners filed the petition on January 6, 2012. Before we conducted the trial on February 3, 2014, the case was set for trial three times and continued three times, each time, it appears, at petitioners' request, once so petitioners could undertake prescheduled travel on account of the birth of a grandchild. At no point before the trial did petitioners indicate to the Court any difficulty in obtaining evidence to support their case. While petitioners appear pro sese, we think that their lack of demonstrated diligence in obtaining from the LAPD what evidently they think are important documents argues against our opening the record and burdening respondent with additional investigation and another trial session. *See, e.g.*, *Haydon v. Commissioner*, T.C. Memo. 1991–42 (denying motion for reconsideration and declining to accept new evidence where taxpayers made no showing of due diligence or explained why documents could not have been obtained earlier). We will not open the record as petitioners requested.

IV. *Conclusion*

Respondent's adjustment, including in petitioners' 2009 gross income the leave payments, is sustained.

*Decision will be entered under Rule 155.*