Filed 8/28/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL WALKER, as Trustee, etc., et al., | |
| Plaintiffs and Appellants, | G050552 |
| v. | (Super. Ct. No. 30-2012-00591239) |
| CITY OF SAN CLEMENTE et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge. Affirmed.

Rutan & Tucker, Jeffrey M. Oderman, Robert O. Owen and Ajit S. Thind for Defendants and Appellants.

Spach, Capaldi & Waggaman and Madison Spach, Jr.; Brad Malamud and Paul Rosenfield for Plaintiffs and Appellants.

\* \* \*

The Mitigation Fee Act (Gov. Code, § 66000 et seq.; Act)[1] authorizes a local agency to impose fees on specific development projects to defray the cost of new or additional public facilities that are needed to serve those developments. The Act establishes a variety of requirements to ensure local agencies timely use these fees to pay for public facilities that serve those very developments rather than divert the fees for general revenue purposes. For example, when establishing a development fee, a local agency must identify both how it will use the fee and the relationship between its use and the developments on which the fee is imposed. Moreover, the local agency must make new findings every five years to justify its continued retention of any fees it has collected but failed to use. If the agency does not make these five-year findings, the Act requires the agency to refund the unused fees to the current owners of the affected properties.

In 1989, defendant and appellant City of San Clemente (City)[2] created the "Beach Parking Impact Fee" because the City anticipated that substantial residential development proposed for the City's inland areas would significantly increase the demand for public parking at the City's beaches. The City therefore imposed the Beach Parking Impact Fee on all new residential developments outside the City's coastal zone to defray the cost of acquiring and constructing new beach parking facilities. Between 1989 and 2009, the City collected nearly $10 million in Beach Parking Impact Fees and accrued interest, but the City spent less than $350,000 to purchase a vacant parcel on which it has not constructed any parking facilities.

Plaintiffs and respondents Daniel Walker, as Trustee for the 1997 Walker Family Trust, and W. Justin McCarthy (collectively, Plaintiffs) filed this action to compel

---

[1]     All statutory references are to the Government Code unless otherwise stated.

[2]     The City Council of San Clemente also is a defendant and appellant, but we simply refer to the City for ease of reference.

the City to refund the unused portion of the Beach Parking Impact Fee. Plaintiffs alleged the five-year findings the City made in 2009 failed to satisfy the Act's requirements and did not justify the City's continued retention of the unexpended Beach Parking Impact Fees because the increased parking demand had not materialized over the ensuing 20 years. The trial court agreed and entered judgment ordering the City to refund approximately $10.5 million in unexpended impact fees to the current property owners on which the fees were imposed.

We affirm because the City failed to make the five-year findings the Act required and the statutorily-mandated remedy for that failure is the refund of all unexpended Beach Parking Impact Fees. The City contends it satisfied the Act's requirement of five-year findings when it "receive[d] and file[d]" a 2009 staff report. We disagree. The report's findings were mere conclusions, not the specific findings required under the Act. Consequently, the City failed to justify its continued retention of the unexpended impact fees.

Plaintiffs also appeal, challenging the trial court's decision to deny (1) Plaintiffs' claim the five-year findings the City made in 2004 were untimely; (2) Plaintiffs' request for an order compelling the City to sell the vacant lot it purchased and refund the sale proceeds with the unexpended Beach Parking Impact Fees; (3) Plaintiffs' request for an order compelling the City to reimburse the Beach Parking Impact Fee account for the administrative overhead costs the City charged; and (4) Plaintiffs' request for a judicial determination the City improperly commingled the Beach Parking Impact Fees with other City revenues. As explained below, we affirm the judgment because these claims lack factual or legal merit.

I

LEGAL BACKGROUND: THE MITIGATION FEE ACT

The Legislature passed the Act "'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.'" (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864 (*Ehrlich*).) The Act creates uniform procedures for local agencies to follow in establishing, imposing, collecting, accounting for, and using development fees. (*Centex Real Estate Corp. v. City of Vallejo* (1993) 19 Cal.App.4th 1358, 1361-1362 (*Centex*).) In passing the Act, the Legislature found and declared that "untimely or improper allocation of development fees hinders economic growth and is, therefore, a matter of statewide interest and concern." (§ 66006, subd. (e).)

The Act defines a development fee as "a monetary exaction other than a tax or special assessment . . . that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (§ 66000, subd. (b).) "A fee shall not include the costs attributable to existing deficiencies in public facilities, but may include the costs attributable to the increased demand for public facilities reasonably related to the development project in order to (1) refurbish existing facilities to maintain the existing level of service or (2) achieve an adopted level of service that is consistent with the general plan." (§ 66001, subd. (g).) "'Public facilities' includes public improvements, public services, and community amenities." (§ 66000, subd. (d).)

To establish a development fee a local agency must identify "the purpose of the fee" and "the use to which the fee is to be put." (§ 66001, subd. (a).) The agency also must determine that both "the fee's use" and "the need for the public facility" are reasonably related to "the type of development project on which the fee is imposed." (*Ibid.*; see *Home Builders Assn. of Tulare/Kings Counties, Inc. v. City of Lemoore* (2010)

4

185 Cal.App.4th 554, 561 (*Home Builders*).) "The Act thus codifies, as the statutory standard applicable by definition to nonpossessory monetary exactions, the 'reasonable relationship' standard employed in California and elsewhere to measure the validity of required dedications of land (or fees in lieu of such dedications) that are challenged under the Fifth and Fourteenth Amendments." (*Ehrlich*, *supra*, 12 Cal.4th at p. 865.)

To impose an established development fee as a condition of approval for a specific development project, a local agency must "determine how there is a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed." (§ 66001, subd. (b).) The agency also must "identify the public improvement that the fee will be used to finance." (§ 66006, subd. (f).)

Each development fee a local agency collects must be deposited "in a separate capital facilities account or fund in a manner to avoid any commingling of the fees with other revenues and funds of the local agency." (§§ 66006, subd. (a); 66001, subd. (c).) A local agency must expend all development fees its collects "solely and exclusively for the purpose or purposes" the agency identified when it imposed the fee on a development project (§ 66008; see § 66006, subd. (a)), and the public facilities built or established with the fee must serve the developments on which the fee was imposed (*Home Builders*, *supra*, 185 Cal.App.4th at p. 566). A development fee may not be "levied, collected, or imposed for general revenue purposes." (§ 66008; see § 66006, subd. (a).)

At the end of each fiscal year, a local agency must separately account for each development fee it collected by providing the public certain information, including a brief description of the fee and its amount, the beginning and ending balance of the account in which the fee was deposited, the amount of fees collected and interest earned, an identification of each public improvement on which the fee was expended, and an approximate date when construction will begin on any incomplete public improvement

5

identified when the fee was imposed if the agency determines it has collected sufficient funds to finance the identified improvement.  (§ 66006, subd. (b)(1).)  If the agency does not provide an approximate start date for construction within 180 days of determining it has collected sufficient funds, the agency must refund the unexpended portion of the fee and all accrued interest to the current owners of the properties on which the fee was imposed.  (§ 66001, subd. (e).)

For all unexpended development fees, the agency must make findings every fifth year that identify how the fee will be used, demonstrate a reasonable relationship between the fee and the purpose for which it is charged, identify all sources and amounts of funding anticipated to complete financing for incomplete improvements that were identified when the fee was established, and designate the approximate dates for that funding to be deposited into a dedicated account.  (§ 66001, subd. (d)(1).)  The public agency must make these findings "in connection with" the annual report the Act requires the agency to provide.  (§ 66001, subd. (d)(2).)  If these findings are not made, "the local agency shall refund the moneys in the account or fund" to the then current owners of the affected properties on a prorated basis plus accrued interest.  (§ 66001, subds. (d)(2) & (e); see *Home Builders*, *supra*, 185 Cal.App.4th at pp. 565-566.)

Any party may protest a local agency's decision to establish or impose a development fee by tendering any required payment and serving the agency with notice of the protest within 90 days of the fee being established or imposed.  (§ 66020, subds. (a) & (d)(1).)  Any party who timely serves a protest may file an action to "attack, review, set aside, void, or annul" the fee within 180 days of serving that protest. (§ 66020, subd. (d)(2).)  "Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition."  (*Ibid*.)

6

## II

### FACTS AND PROCEDURAL HISTORY

In the mid-1980's, several real estate developers proposed large residential developments outside the City's coastal zone that had the potential to nearly double the City's population. Concerned that those developments east of the Interstate 5 freeway could significantly impact the availability of public beach parking, the City directed the developers to prepare a study evaluating the potential problem. The study concluded that public beach parking was at or above capacity on summer weekends and holidays, 35 percent of beach users were City residents, and the proposed developments in the City's noncoastal zone would require approximately 360 new parking spaces to maintain the City's current level of beach parking.

Based on the parking study, the City in April 1989 adopted an ordinance establishing the Beach Parking Impact Fee. Under the Act, the City identified the fee's purpose as "mitigat[ing] the impact of the increased demand on beach parking caused by new residential development in that portion of the City of San Clemente which lies outside the City's coastal zone," and the fee's use as financing "the acquisition and/or construction of parking facilities at or near the beach." The City set the fee at $1,500 per dwelling unit, subject to annual adjustment based on the Consumer Price Index, and identified the construction of parking structures at "the Pier Bowl, North Beach, or State Park" as the intended new parking facilities.

The City collected over $300,000 in the Beach Parking Impact Fee's first year and continued to collect substantial sums each year as residential development in the City's noncoastal zone progressed. In 1994, the City used approximately $337,000 in Beach Parking Impact Fees, and approximately $138,000 in Local Drainage Fund monies, to purchase a vacant lot on El Camino Real adjacent to the City's North Beach

7

parking lot. The Local Drainage Fund monies were used because a drainage channel ran under the lot.

In the early 1990's, the City continued to study the demand for public beach parking and possible remedies. By 1995, these studies determined the parking structures the City originally contemplated were no longer needed because there was a surplus of parking in the City's North Beach area, beach parking "was in equilibrium at the Pier," and parking needs in those areas could be satisfied with existing parking facilities and "functional parking improvements." In April 1996, the City therefore adopted an ordinance to reduce the Beach Parking Impact Fee to $750 per dwelling unit, subject to annual adjustments based on the Consumer Price Index. The City maintained the fee's purpose as "mitigat[ing] the impact of new development on beach parking," but the City broadened the fee's use to financing improvements to beach parking. When it reduced the Beach Parking Impact Fee, the City already had collected approximately $2 million.

The City continued to collect the reduced Beach Parking Impact Fee throughout the 1990's and the 2000's, but it did not construct any new public beach parking facilities, not even on the vacant lot it purchased near the City's North Beach parking lot. Instead, the City conducted additional studies about the adequacy of its public beach parking. None of these studies identified or predicted the parking shortage the City envisioned when it originally established and began collecting the Beach Parking Impact Fee. To the contrary, these studies recognized the City had adequate beach parking. The City continued to monitor and study its public beach parking, but it did not construct any new facilities or make any significant improvements.

In 2004, the City "receive[d] and file[d]" the "Five-Year Required Report Mitigation Fee Act City of San Clemente" (2004 Five-Year Report). The City's staff prepared the report to comply with the Act's requirement that the City make findings to justify its continued retention of the collected but unexpended Beach Parking Impact Fees

8

it had held for more than five years. In 2009, the City again "receive[d] and file[d]" a "Five-Year Required Report Mitigation Fee Act City of San Clemente" (2009 Five-Year Report) to comply with the Act's five-year findings requirement. This second report was identical to the first.

By the end of 2009, the City's noncoastal zone was essentially built out and the City had collected nearly $6 million in Beach Parking Impact Fees, plus more than $3 million in interest. Nonetheless, the City still had not constructed any new public beach parking facilities, and it did not have a specific plan for using the impact fees.

In August 2012, Plaintiffs filed this action for declaratory and mandamus relief to compel the City to refund the unexpended Beach Parking Impact Fees. Because the statute of limitations expired on any challenge to the City's decisions to establish and impose the impact fee and impose it on specific development projects, Plaintiffs did not challenge those actions by the City. Instead, Plaintiffs alleged the City must refund the Beach Parking Impact Fees because it did not timely use the fees for the designated purpose of constructing new beach parking facilities and the City failed to justify its continued retention of the fees. To the contrary, Plaintiffs alleged the City repeatedly had determined that there was no need for new beach parking facilities caused by the development of the City's noncoastal zone and that zone was essentially built out. Plaintiffs also claimed the unexpended impact fees must be refunded because the City's 2004 Five-Year Report was two years late and its 2009 Five-Year Report failed to make the requisite findings.

After a bench trial, the trial court entered judgment against the City and ordered it to refund the unexpended impact fees to the current owners of the properties on which the fee had been imposed. The parties estimated the amount of unexpended fees together with accrued interest totaled approximately $10.5 million, and the judgment established a formula to determine the refund amount and each owner's pro rata share. The court found the City must refund the unexpended Beach Parking Impact Fees

9

because (1) the 2009 Five-Year Report failed to make all required findings, and (2) the City's statements in the 2009 Five-Year Report constituted a determination that the City had sufficient funds to complete the beach parking improvements, but it failed to identify a start date for the construction of those improvements. The court rejected Plaintiffs' claim the City belatedly adopted the 2004 Five-Year Report because that claim was time-barred based on the four-year catchall statute of limitations in Code of Civil Procedure section 343. The court also denied Plaintiffs' request for an order compelling the City to (1) sell the vacant lot it purchased with Beach Parking Impact Fees and include the sale proceeds in the refund; and (2) repay administrative overhead charges it made against the account holding the Beach Parking Impact Fees. This appeal by the City and Plaintiffs' cross-appeal followed.

III

DISCUSSION

A.    *Standard of Review*

A local agency's establishment of a development fee under the Act is a quasi-legislative measure reviewed under the narrow standards applicable to ordinary mandamus (Code Civ. Proc., § 1085), as opposed to the broader standards applicable to administrative mandamus (Code Civ. Proc., § 1094.5). (*Home Builders*, *supra*, 185 Cal.App.4th at p. 561; *Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, 849 (*Warmington*); *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 328 (*Garrick*).) Judicial review is limited to determining whether the local agency's action "'was arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law.'" (*Warmington*, at p. 850; see *Home Builders*, at p. 561.) "The action will be upheld if the [agency] adequately considered all relevant factors and demonstrated a rational connection between those factors, the choice made, and the purposes of the

10

enabling statute.  [Citation.]  This issue is a question of law."  (*Home Builders*, at p. 561.) "'On appeal, we independently review the agency's decision and apply the same standard of review that governs the superior court.'"  (*SN Sands Corp. v. City and County of San Francisco* (2008) 167 Cal.App.4th 185, 191 (*SN Sands*); see *Cresta Bella, LP v. Poway Unified School Dist.* (2013) 218 Cal.App.4th 438, 451 (*Cresta Bella*).)

Neither the parties nor our own research has disclosed any authority discussing the standard of review on whether a local agency properly made the five-year findings required under the Act to retain collected but unexpended development fees.  We conclude the same arbitrary and capricious standard used to review the decisions of a local agency also applies to the required five-year findings because they constitute a quasi-legislative action equivalent to the initial establishment and imposition of the fee.

We review de novo any challenge based on an interpretation of the Act's requirements.  (See *Warmington*, *supra*, 101 Cal.App.4th at p. 849.)  We apply the substantial evidence standard to review any factual findings the trial court made.  (*Hensel Phelps Construction Co. v. San Diego Unified Port Dist.* (2011) 197 Cal.App.4th 1020, 1029-1030.)

B.      *The Trial Court Properly Ordered the City to Refund the Unexpended Beach Parking Impact Fees*

1.      The City Failed to Make the Required Five-Year Findings

The City contends its 2009 Five-Year Report contained all the necessary findings the Act required for the City to retain the nearly $10 million in unexpended Beach Parking Impact Fees it still held 20 years after it started collecting the fee.  We disagree because the City misconstrues both the five-year findings required under the Act and the City's own 2009 Five-Year Report.

As explained above, when a local agency has not used all of a development fee within five years of the date it started to collect the fee, the agency must make

11

findings that (1) identify the agency's purpose in holding the unexpended balance; (2) demonstrate a reasonable relationship between the unexpended balance and the purpose identified when the agency assessed the fee; (3) identify the sources and funding anticipated to complete any incomplete public improvement identified when the fee was established; and (4) designate the approximate date the agency expects that funding to be deposited in the account holding the unexpended balance. (§ 66001, subd. (d)(1).) These findings therefore require the local agency to affirmatively demonstrate that it still needs the unexpended fee to achieve the purpose for which it was originally imposed, and that the agency has a plan on how to use the unexpended balance to achieve that purpose. These findings are due at the end of each five-year period if the agency continues to hold an unexpended portion of a development fee. (*Ibid*.) The Act requires the agency to refund the unexpended fees to the current owners of the affected properties if it fails to make the five-year findings. (§ 66001, subd. (d)(2).)

The five-year findings requirement establishes "a mechanism . . . to guard against unjustified fee retention" by a local agency (*Home Builders*, *supra*, 185 Cal.App.4th at p. 565; see *Garrick*, *supra*, 3 Cal.App.4th at p. 332), and it ensures the agency "refund[s] any portion of [a development] fee not expended within five years unless the local agency can demonstrate a reasonable relationship between the unexpended fee and its purpose" (*Centex*, *supra*, 19 Cal.App.4th at p. 1361). The Legislative Counsel's Digest when the Act was initially enacted confirms the requisite five-year findings require a local agency to "reexamine the necessity for the unexpended balance of the fee, as specified, every 5 years, and refund to then current owner or owners of the development project any unexpended portion of the fee for which need cannot be demonstrated at the time of this review, together with any accrued interest." (Legis. Counsel's Dig., Assem. Bill No. 1600 (1987-1988 Reg. Sess.) 4 Stats. 1987, ch. 927,

12

p. 301.)[3]  This reexamination and refund requirement prevents a local agency from collecting and holding a development fee for an extended period of time without a clear and demonstrable plan to use the fee for the purpose it was imposed.

Here, the City's 2009 Five-Year Report failed to make the specific findings the Act required.[4]  For example, the Act required the City to make a finding demonstrating a reasonable relationship between the unexpended Beach Parking Impact Fees and the purpose for which the fee was originally charged.  (§ 66001, subd. (d)(1)(B).)  In an attempt to make that finding, the 2009 Five-Year Report states, "New parking facility improvements are determined by the City Engineering department and cost estimates established.  The fee is calculated based on the number of new residential dwelling units planned through build-out of the City."  This finding fails to discuss the relationship between the nearly $10 million balance in the Beach Parking Impact Fee account and the purpose for which the fee was established, let alone demonstrate a reasonable relationship between the unexpended fees and their purpose. The 2009 Five-Year Report says nothing about any impact residential development in the City's noncoastal zone has had on the City's public beach parking 20 years after the City

---

[3]        """"The Legislative Counsel's Digest is printed as a preface to every bill considered by the Legislature.""""  (*People v. Vega* (2014) 222 Cal.App.4th 1374, 1382.) It "'constitutes the official summary of the legal effect of the bill and is relied upon by the Legislature throughout the legislative process,' and thus 'is recognized as a primary indication of legislative intent.'"  (*In re M.G.* (2014) 228 Cal.App.4th 1268, 1277, fn. 7.) "'Although the Legislative Counsel's summary digests are not binding [citation], they are entitled to great weight.'"  (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1401.)

[4]        Plaintiffs concede the City made findings when it "receive[d] and file[d]" the 2009 Five-Year Report, but argue the findings set forth in that report do not satisfy the Act's requirements.  We accept Plaintiffs' concession and examine whether the findings in the 2009 Five-Year Report comply with the Act.  We express no opinion on whether the City actually made any findings by simply "receiv[ing] and fil[ing]" the 2009 Five-Year Report the City's staff prepared.

13

started collecting the Beach Parking Impact Fee, the current condition of the City's public beach parking, the status of any of the improvements identified when the City established the fee, or what the City has done in the last 20 years or future plans for public beach parking. As the trial court found, the report "dodges the question."

The Act also required the City to make findings that (1) identified the sources and funds anticipated to complete financing for incomplete beach parking improvements that were identified when the Beach Parking Impact Fee was established, and (2) designated the approximate dates when it anticipates receiving that funding. (§ 66001, subd. (d)(1)(C) & (D).) In an effort to make these findings, the 2009 Five-Year Report states, "This funding source is anticipated to be sufficient to complete the financing of identified improvements" and "Not applicable."[5] Neither of these findings satisfies the Act's requirements. The first finding is sufficient to the extent it limits the sources of funding for beach parking improvements to the Beach Parking Impact Fee, but the finding fails to identify the amount of funding needed to complete the improvements and generally refers to "identified improvements" without specifying or describing those improvements. The second of these findings also falls short because it fails to designate when the City anticipates receiving the additional Beach Parking Impact Fees needed to complete the financing for the incomplete beach parking improvements. The City's findings simply did not include the findings section 66001, subdivision (d)(1)(C) and (D) required.

---

[5] The trial court concluded these two findings meant the City determined it had collected sufficient funds to finance incomplete beach parking improvements identified when the Beach Parking Impact Fee was imposed. Based on that conclusion, the trial court ordered the City to refund the unexpended Beach Parking Impact Fees because the City failed to provide an approximate start date for construction of the improvements within 180 days of the 2009 Five-Year Report. (§ 66001, subd. (e).) We do not address this aspect of the trial court's ruling because the City's failure to make the five-year findings is sufficient to support the judgment requiring the City to refund the unexpended impact fees. (§ 66001, subd. (d)(2).)

14

The City's findings in the 2009 Five-Year Report, made 20 years after it established and began collecting the Beach Parking Impact Fee, fail to demonstrate the City still needs the nearly $10 million in fees and interest it collected to address public beach parking issues created by new development in the noncoastal zone. The report also fails to show how it will use those funds to address beach parking issues, what improvements the City intends to construct with the funds, the cost of those improvements, whether the City requires more money, and if so, when the City anticipates receiving that money. This is information the Act required, but the City failed to provide.[6]

The City contends its finding about the relationship between the unexpended Beach Parking Impact Fees and the fee's purpose is adequate because it "summarize[s] the methodology the City used in determining the 'reasonable relationship' between the [Beach Parking Impact] Fee and the improvements to be constructed with the fee." According to the City, the Act did not require it to provide any further detail because the City "was still in the process of identifying specific beach parking improvement projects to be funded," and therefore nothing of any significance had changed since the City made its original findings to support establishing the fee in 1989 and to support amending it in 1996. Not so.

As explained above, the five-year findings requirement imposed a duty on the City to *reexamine* the need for the unexpended Beach Parking Impact Fees to finance

---

[6]   The City contends the trial court never found the City's five-year findings were deficient, asserting that the court solely based its judgment on the City's purported failure to identify a start date for construction within 180 days of the 2009 Five-Year Report because the City had collected sufficient funds to finance the projects. We disagree. The trial court clearly found the City failed to make the five-year findings required by section 66001, subd. (d)(1). Moreover, we review the City's action, not the trial court's, and we are not bound or limited by the trial court's ruling. (*SN Sands*, *supra*, 167 Cal.App.4th at p. 191; *Cresta Bella*, *supra*, 218 Cal.App.4th at p. 451.)

15

beach parking improvements that purportedly were required by the new development in the City's noncoastal zone. The City may not rely on findings it made 20 years earlier to justify the original establishment of the Beach Parking Impact Fee, or the findings it made 13 years earlier to justify reducing the amount of the fee. Instead, the Act required the City to make new findings demonstrating a continuing need for beach parking improvements caused by the new development in the noncoastal zone. The City failed to do so.

Similarly, the City's claim it had not yet identified the specific improvements it intended to finance with the Beach Parking Impact Fee does not make the City's finding adequate. When the City established the Beach Parking Impact Fee in 1989 the Act required the City to identify how it would use the fee. (§ 66001, subd. (a)(2).) Because that use was financing "the acquisition and/or construction of parking facilities at or near the beach," the Act also required the City to identify the facilities it would acquire or construct. The City could have generally identified by type or category the public facilities it intended to acquire or construct, but specific construction or improvement plans were not required. (*Home Builders*, *supra*, 185 Cal.App.4th at pp. 564-565; *Garrick*, *supra*, 3 Cal.App.4th at p. 335.) Starting in 1997, the Act also required the City to identify the public improvement that the fee would finance each time the City imposed the Beach Parking Impact Fee as a condition of approval for a specific development project. (§ 66006, subd. (f); Stats. 1996, ch. 569 (S.B. 1693), § 2, p. 3182.) Accordingly, in 2009, the City could not claim it did not know what projects it intended to finance with the unexpended Beach Parking Impact Fees and continue to retain those fees.[7]

---

[7]    We express no opinion on whether the City could have satisfied the Act's five-year findings requirement by claiming beach parking conditions had changed and therefore the City was studying whether it could satisfy the purpose of the assessment by financing different projects. The City's findings would have to explain that situation, but the 2009 Five-Year Report provides no such explanation.

16

The City also contends the 2009 Five-Year Report's findings about the source and amount of additional funding and the approximate date on which it would receive that funding complied with the Act's requirements. According to the City, the Act did not require it to specify the amount of additional funding it anticipated needing or when it would receive that funding because the City "had not yet identified or prepared cost estimates for the specific parking improvement projects it was planning to construct." We disagree. The Act clearly required a finding that "identif[ied] all sources and amounts of funding anticipated to complete financing in incomplete improvements." (§ 66001, subd. (d)(1)(C).) The Act provides no exceptions or limitations on this required finding. Moreover, as explained above, the Act required the City to identify the public facilities it intended to finance with the Beach Parking Impact Fee when it originally established the fee in 1989. (§ 66001, subd. (a)(2).) Starting in 1997, the Act also required the City to identify the public improvement it intended to finance with the Beach Parking Impact Fee each time it imposed the fee as a condition of approval for a specific development project. (§ 66006, subd. (f); Stats. 1996, ch. 569 (S.B. 1693), § 2, p. 3182.) Accordingly, the Act does not allow the City to identify no public improvement projects it intends to finance with the Beach Parking Impact Fee 20 years after establishing the fee and still retain the unexpended balance.

2.     A Refund Is the Statutorily-Mandated Remedy

The City contends the trial court should have remanded the matter to the City to make new findings correcting the "technical deficienc[ies]" in the City's five-year findings rather than requiring the City to forfeit the unexpended impact fees that the City properly had collected. The Act's plain language prohibits this remedy.

Section 66001, subdivision (d)(2), unmistakably declares, "If the findings are not made as required by this subdivision, the local agency *shall refund the moneys* in the account or fund." (Italics added.) A statute's clear and unambiguous language

17

controls, and therefore we need not resort to extrinsic sources or rules of statutory interpretation to determine the statute's meaning. (*Huntington Continental Townhouse Association, Inc. v. Miner* (2014) 230 Cal.App.4th 590, 598-599; *People v. Pellecer* (2013) 215 Cal.App.4th 508, 512.) In any event, the Act's legislative history repeatedly confirms that in passing section 66001, subdivision (d), the Legislature intended that a local agency must refund unexpended development fees if the agency failed to make the required five-year findings. (See, e.g., Legis. Counsel's Dig., Assem. Bill No. 1600 (1987-1988 Reg. Sess.) 4 Stats. 1987, ch. 927, p. 301; Legis. Counsel's Dig., Sen. Bill No. 1693 (1995-1996 Reg. Sess.) 6 Stats. 1996, ch. 569, pp. 214-215.)

The City does not claim section 66001, subdivision (d), is ambiguous, nor does the City cite to any other provision of the Act or its legislative history that allows any remedy other than a refund when a local agency fails to make the required five-year findings. Instead, the City claims a remand is ordinarily the remedy ordered when a local agency applies an incorrect legal standard (see *SN Sands*, *supra*, 167 Cal.App.4th at p. 194) or fails to make "required legislative findings" (see *Manufactured Home Communities, Inc. v. County of San Luis Obispo* (2008) 167 Cal.App.4th 705, 715 (*Manufactured Home*); *Respers v. University of Cal. Retirement System* (1985) 171 Cal.App.3d 864, 873 (*Respers*); *Mountain Defense League v. Board of Supervisors* (1977) 65 Cal.App.3d 723, 731-732 (*Mountain Defense*); *Hadley v. City of Ontario* (1974) 43 Cal.App.3d 121, 128-130 (*Hadley*)). What may or may not be the ordinary remedy, however, is irrelevant when the Legislature unambiguously establishes the statutory remedy for a violation of its laws.

Moreover, the cases on which the City relies do not apply to the current facts. *SN Sands* does not apply here because the City did not use an incorrect legal standard in making its five-year findings. The City properly identified the findings the Act required it to make, but simply failed to make those specific findings.

18

*Manufactured Home*, *Respers*, *Mountain Defense*, and *Hadley* do not apply because they involve administrative mandamus proceedings under Code of Civil Procedure section 1094.5 (section 1094.5) rather than traditional mandamus proceedings under Code of Civil Procedure section 1085 (section 1085). (*Manufactured Home*, *supra*, 167 Cal.App.4th at p. 710; *Respers*, *supra*, 171 Cal.App.3d at p. 870-871; *Mountain Defense*, *supra*, 65 Cal.App.3d at pp. 731-732; *Hadley*, *supra*, 43 Cal.App.3d at pp. 127-130.) In administrative mandamus proceedings, a court reviews a public agency's adjudicatory decision to determine whether the evidence supports the agency's findings and whether the agency's findings support its ultimate decision. Section 1094.5 requires the agency to make findings to bridge the analytic gap between the raw evidence and the ultimate decision. When a public agency fails to make findings to support its decision, remand is an appropriate remedy because a court cannot review the agency's decision without knowing how it analyzed the evidence to reach its decision. (See, e.g., *Hadley*, at pp. 127-128.)

As explained above, however, judicial review under section 1085 is much more limited: a court does not review the agency's analytical route, but rather defers to the agency's decision unless it is arbitrary, capricious, or totally lacking in evidentiary support. (*Home Builders*, *supra*, 185 Cal.App.4th at p. 561.) Section 1085 does not require an agency to make findings to support its legislative and quasi-legislative decisions unless another statute specifically requires findings. (*Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, 261.) Here, section 66001, subdivision (d), required the City to make findings to support its quasi-legislative decision to retain the unexpended Beach Parking Impact Fees, and that statute also specified the remedy for the City's failure to do so. Case law allowing a remand in a different legal context does not permit us to disregard that statute's clear mandate. (See *Garrick*, *supra*, 3 Cal.App.4th at p. 328 ["'precedents drawn from administrative mandamus proceedings should probably still be applied with caution to the review of findings in a quasi-legislative context.

19

Procedural or evidentiary requirements drawn from analogy to judicial proceedings would appear peculiarly inappropriate . . .'"].)

The City also argues the trial court should have remanded the matter for the City to correct its findings because the law abhors forfeitures and therefore requires statutes imposing them to be strictly construed. (See *Enfantino v. Superior Court* (1984) 162 Cal.App.3d 1110, 1113; *Hernandez v. Temple* (1983) 142 Cal.App.3d 286, 290.) Although it is true forfeitures are disfavored, it does not logically follow that forfeitures are unenforceable. To the contrary, courts must enforce unambiguous statutory forfeitures and may not avoid them by rewriting the statute under the guise of statutory construction. (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 190 Cal.App.4th 823, 829-830.) Assuming section 66001, subdivision (d)'s refund provision constitutes a forfeiture, the City offers no strict or other construction of the provision that would allow the City to avoid refunding the unexpended Beach Parking Impact Fees based on its failure to make the required five-year findings.

Finally, the City contends section 66001, subdivision (d)(2), does not apply because the City made findings and we simply have concluded those findings were insufficient. According to the City, section 66001, subdivision (d)(2), requires a refund only when a local agency fails to make any findings. Not so. Section 66001, subdivision (d)(2), requires a refund when "the findings are not made *as required by this subdivision.*" (Italics added.) For example, the subdivision required the City to specifically demonstrate a reasonable relationship between the unexpended development fee and the purpose for which the fee was charged. As explained above, the City's findings do not identify any relationship between the unexpended Beach Parking Impact Fees and the purpose for which the fee was charged, let alone a reasonable relationship. The City therefore did not make findings "as required by this subdivision," and the statute requires the City to refund the unexpended impact fees. If we accepted the City's contention, a local agency could avoid refunding unexpended development fees by

20

making any findings no matter how inadequate, and the only repercussion would be another opportunity to repeat the process. That is not what the statute's clear language requires.

C. *Plaintiffs' Appeal From the Trial Court's Judgment Lacks Merit*

Although the trial court entered judgment in Plaintiffs' favor and ordered the City to refund the entire unexpended balance of the Beach Parking Impact Fee, Plaintiffs also appealed from the judgment. They argue the trial court erroneously denied additional relief they sought. We find these claims unpersuasive.

1. The Statute of Limitations Barred Plaintiffs' Claims Regarding the 2004 Five-Year Report

Plaintiffs contend the trial court erred in finding the four-year limitations period in Code of Civil Procedure section 343 barred Plaintiffs' challenges to the City's 2004 Five-Year Report. Plaintiffs, however, do not contend the trial court applied the wrong limitations period or miscalculated when that period expired. Instead, Plaintiffs contend the trial court erred in failing to apply the equitable doctrines of estoppel and unjust enrichment to prevent the City from asserting the statute of limitations as a defense. Plaintiffs fail to meet their burden of establishing error.

A party may be equitably estopped to assert the statute of limitations when his or her conduct induced another not to file a lawsuit within the applicable limitations period. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1089.) Plaintiffs, however, point to no conduct by the City during the applicable limitations period that induced them not to bring an action challenging the 2004 Five-Year Report. The only conduct by the City that Plaintiffs identify is a letter from the City's attorney that stated the City filed the 2004 Five-Year Report in 2003, but that letter was sent in 2012 — several years after the limitations period already had expired.

21

Plaintiffs similarly fail to explain how applying the statute of limitations unjustly enriched the City. The trial court ordered the City to refund the unexpended Beach Parking Impact Fees based on other claims, and therefore the trial court's application of the statute of limitations does not unjustly enrich the City.

2.     The City's Deficient Five-Year Findings Do Not Require the City to Sell the Vacant Lot It Purchased With Beach Parking Impact Fees

Plaintiffs contend the trial court erred in denying their request to compel the City to sell the vacant lot it purchased adjacent to its North Beach parking lot and refund the sale proceeds to the affected property owners. According to Plaintiffs, the Act required the City to use the Beach Parking Impact Fee for the designated purpose of acquiring and constructing public beach parking, but the City's purchase of a vacant lot failed to further the purpose of the fee because the City did nothing with the lot for approximately 20 years. Plaintiffs, however, fail to cite any authority that would have allowed the trial court to order the City to sell the lot.

When a local agency fails to make the required five-year findings, section 66001, subdivision (d)(2), requires the agency to "refund the moneys in the account or fund as provided in subdivision (e)." Section 66001, subdivision (e), provides that the local agency shall refund "the *unexpended portion* of the fee, and any interest accrued thereon" to "the then current record owner or owners of the lots or units, as identified on the last equalized assessment roll." (Italics added.)

Here, the vacant lot the City purchased is not an "unexpended portion" of the Beach Parking Impact Fee. To the contrary, the City expended a portion of the impact fee to purchase the lot and Plaintiffs concede no one challenged that purchase. Nothing in the Act or any other authority Plaintiffs have cited authorized the trial court to order the City to undo what was at the time a valid use of the impact fees. The City has not yet constructed any public beach parking on the vacant lot, but it also has not used the lot for any purpose inconsistent with public beach parking.

22

The only limitation the Act places on the use of a development fee is the requirement that the local agency use the fee "solely and exclusively for the purpose or purposes . . . for which the fee was collected." (§ 66008; see § 66006, subd. (a).) Plaintiffs failed to show the City violated this command or that a compelled sale of the vacant lot is the appropriate remedy for the City's failure to construct beach parking on the lot over the past 20 years. If the City seeks to use the vacant lot in the future for a purpose inconsistent with the Beach Parking Impact Fee's purpose, Plaintiffs then may challenge the City's action.

3. The Act Did Not Prohibit the City From Charging the Administrative Overhead Costs Associated With the Beach Parking Impact Fee

Plaintiffs contend the trial court erred in refusing to order the City to return administrative overhead costs it charged the account holding the impact fees. In Plaintiffs' view, the City must return these administrative costs before it refunds the unexpended Beach Parking Impact Fees because the Act required the City to use the impact fees exclusively for acquiring and constructing public beach parking, and that purpose does not include paying administrative overhead costs. We do not find this argument persuasive.

The Act requires a local agency to expend development fees "solely and exclusively for the purpose or purposes . . . for which the fee was collected" and prohibits an agency from levying, collecting, or imposing a development fee "for general revenue purposes." (§ 66008; see § 66006, subd. (a).) The parties cite nothing in the Act or its history that guides us in determining what it means to use a fee exclusively for a specific purpose, and we have uncovered no authority that sheds any light on the subject.

Nonetheless, we conclude using a portion of a development fee to facilitate compliance with the Act's requirements constitutes a use that furthers the purpose for which the fee was collected. For example, the Act requires that a local agency establish a separate account for each development fee it collects and account for the fee to ensure it

23

is not commingled with any of the agency's other funds. The administrative costs to comply with these requirements further the purpose for which the fee was collected because those costs ensure the fee is available for the designated purpose once sufficient funds are collected. Indeed, without the administrative costs of accounting for the fee, the local agency would not know how much it has collected.

Here, the City established a cost allocation plan and began charging many of the programs it runs for the administrative costs associated with the programs. For example, the City established a formula for charging each program for the accounting services required to maintain the program's accounts and also for any other services the City's staff provided. The City worked with an independent consultant to create its cost allocation plan and it annually reviews the allocations for accuracy. The City's financial services officer testified the charges made against the Beach Parking Impact Fee account were allocated to pay for staff time and other costs associated with maintaining the account, accounting for the funds, and other administrative expenses directly related to the Beach Parking Impact Fee.

Plaintiffs point to nothing in the administrative record that shows the City used any portion of the Beach Parking Impact Fee for general revenue purposes. Indeed, Plaintiffs do not challenge the reasonableness or the necessity for any of the administrative costs the City charged. Plaintiffs simply argue no portion of a development fee may be used to pay administrative costs as a matter of law. We decline to impose such a broad prohibition without some clear basis in the Act, and Plaintiffs have pointed to none.

Plaintiffs contend the only administrative costs expressly permitted under the Act are the costs associated with conducting the public hearing required to establish the fee. (See § 66018, subd. (b).) According to Plaintiffs, the Legislature authorizing a local agency to recover those specific administrative costs prevents an agency from using a portion of a development fee to pay any other administrative costs. Not so.

24

Although Plaintiffs do not cite any legal authority or identify a principle of statutory interpretation to support their construction of the Act, Plaintiffs implicitly rely on the statutory interpretation maxim *expressio unius est exclusio alterius*, "which means "'the expression of certain things in a statute necessarily involves exclusion of other things not expressed.'"" (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1411.) This maxim is "a 'mere guide' to be utilized when a statute is ambiguous"; it "'is no magical incantation, nor does it refer to an immutable rule.'" (*Ibid.*; see *In re Christopher T.* (1998) 60 Cal.App.4th 1282, 1290.) It "is generally applied to a specific statute [that] contains a listing of items to which the statute applies" and prevents courts from implying additional exceptions to a general rule when a statute specifies other exceptions. (*Sabrina H.*, at p. 1411; see *Christopher T.*, at p. 1290.) The maxim, however, "does not apply when no reasonable inference exists that items not mentioned were excluded by deliberate choice." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 126; see *Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478, 1484, fn. 3.)

Here, Plaintiffs point to nothing in the Act or its history that shows the Legislature intended to prohibit a local agency from using a portion of a development fee to pay administrative costs directly related to the fee and the agency's compliance with the Act. Section 66008's mandate that a local agency use a development fee exclusively for the purpose for which the fee was collected and Section 66018's authorization to use a portion of a fee to recover the cost of conducting the public hearing required to establish the development fee are found in separate parts of the Act. Section 66008 is part of a chapter in the Government Code that solely addresses a local agency's establishment, imposition, and use of development fees (§§ 66000-66008), and section 66018 is part of a separate chapter that addresses procedures for a local agency to adopt a variety of different types of fees and charges (§§ 66016-66019). Moreover, in concluding the City may recover administrative overheard related directly to the Beach Parking Impact Fee, we are not creating an exception to section 66008's limitation on the

25

use of a development fee; rather, we merely are interpreting what the Legislature meant when it stated a fee shall be expended "solely and exclusively for the purpose or purposes . . . for which the fee was collected." Accordingly, the maxim of *expressio unius est exclusio alterius* has no application here and the trial court did not err in refusing to require the City to reimburse the Beach Parking Impact Fee account for the administrative overhead costs the City incurred.

4.       Plaintiffs Failed to Establish the City Improperly Commingled Beach Parking Impact Fees With Other City Revenues

Plaintiffs contend the trial court erred in finding the City did not improperly commingle the Beach Parking Impact Fee funds with other City funds. Although Plaintiffs concede this challenge "does not affect the refund," they nonetheless contend the trial court should have ordered the City to segregate the impact fees from other City funds because the Act prohibits a local agency from commingling a development fee with other revenues. This contention lacks merit because substantial evidence supports the trial court's finding the City did not commingle the funds.

Section 66006, subdivision (a), provides, "the local agency receiving the [development] fee shall deposit it with the other fees for the improvement in a separate capital facilities account or fund in a manner to avoid any commingling of the fees with other revenues and funds of the local agency." To comply with this mandate, a local agency must deposit a development fee "into 'a separate capital facilities account' to avoid commingling with the local agency's other revenues and funds." (*Home Builders*, *supra*, 185 Cal.App.4th at p. 561.)

The City's financial services officer testified the Beach Parking Impact Fee is collected from a developer as part of a lump sum payment to cover four separate development fees. Upon receipt, the City places the funds into a "Public Facilities Construction Fee Fund" and separates the funds into four separate accounts for each of the development fees. The funds in each account are tracked separately and not

26

commingled. According to the financial services officer, the "Public Facilities Construction Fee Fund" consolidates the four accounts for financial reporting purposes only, but the accounts are maintained separately. This testimony constitutes substantial evidence supporting the trial court's ruling. (See, e.g., *WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1029 ["'Substantial evidence is evidence that is "reasonable, credible, and of solid value"; such that a reasonable trier of fact could make such findings. [Citation.] [¶] It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence'"].)

IV

DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

27