Filed 9/12/22  Pismo Beach Self-Storage v. City of Pismo Beach CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| PISMO BEACH SELF-STORAGE, LP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CITY OF PISMO BEACH et al.,<br><br>    Defendants and Appellants. | 2d Civ. No. B310289<br>(Super. Ct. No. 18CV-0535)<br>(San Luis Obispo County) |

The Mitigation Fee Act (Gov. Code,[1] § 66000, et seq.) requires a reasonable relationship between a development fee assessed by a public agency and the burden that the type of development places on the agency's infrastructure.  Here a city's resolution adopting a fee schedule for self-storage facilities failed to establish that reasonable relationship.  We affirm the trial

---

[1] All further references are to the Government Code unless otherwise indicated.

court's grant of the developer's petition for a writ of mandate against the city.

FACTS

Pismo Beach Self Storage, LP (PBSS) owns a 6.4 acre parcel of land within the City of Pismo Beach (City). The parcel originally had a 15,000-square-foot self-storage building. PBSS demolished the original building and presented plans to the City for a mixed use development in three phases. The first phase includes a 109,509-square-foot self-storage facility. A dispute arose between PBSS and the City over the amount of development impact fees the City had estimated for the self-storage facility.

*Maximus, Inc. (Maximus) study*

In 2004 the City adopted a fee schedule based on a study by Maximus. The study estimated impact fees for residential, mobile homes, hotels, recreational vehicle (RV) parks, retail and office uses. It did not consider self-storage or light industrial uses.

*Revenue and Cost Specialists, LLC (RCS) study*

PBSS requested that the City conduct a study specifically for self-storage uses. PBSS agreed to pay for the study and the City could choose the contractor. The City agreed. The City retained RCS for the purpose of conducting an impact fee study for self-storage and light industrial uses. The study noted that the City had been applying the office and retail use categories from the 2004 Maximus study to all business-related developments. But the demands placed on the City's infrastructure from light industrial and self-storage uses are statistically less. The report stated that it is feasible to create a reasonable nexus for impact fees for light industrial and self-

2

storage uses "by replicating as close as possible, the 2004 [Maximus study] calculations as though light industrial and Self-Storage Units categories had been included in the 2004 effort."

The study states that the light industrial category would include uses generally found in business parks such as appliance repair, woodworking, automobile repair, and "light warehousing (self-storage units)." The study used an average of two employees/users per thousand square feet of development to calculate the infrastructure impact of both light industrial and self-storage uses.

The study stated in part: "Water demand estimates from academic sources can be found that with greater and lesser demands for *Light Industrial Uses* as is also the case for *Retail/Service* and *Office Uses*. It is difficult to determine what demand the City's Water Master Plan consultants would have assigned to *Industrial Uses* as such uses were not anticipated by the City at that time. As a result, RCS recommends the application of the same 0.196 acre-feet per year as the two other business land-use development impact fee categories."

The study recommended impact fees for both light industrial and self-storage uses of $1,061 for water system facilities, $6,572 for state water contract charges, and $3,761 for recycled water facilities per 1,000 square feet of development. That totals $11,394 per 1,000 square feet or $1.135 million for water impact fees for a 100,000-square-foot facility.

The City's chief financial administrator, Nadia Feeser, reacted to the RCS study in an e-mail to the City manager. Feeser recommended that the City keep the water fees the same as the current fee for the office category. She said she studied the historic water use of the former 15,500-square-foot self-storage

3

facility that had been on the property. She said the water use for the former self-storage facility was 25 to 176 percent compared to other properties in the office classification.

*PBSS objections*

When PBSS received the RCS study, it retained Cannon Engineers (Cannon) to review the study. Cannon analyzed the actual impacts of water use at a self-storage facility and comparable impact fees imposed in neighboring cities. Cannon concluded the RCS study overstated the water use and number of employees for a self-storage facility. Cannon stated that the expected water use is 0.9 acre feet per year. Cannon recommended a fee of $8,210 for water system facilities, $17,479 for state water, and $36,800 for recycled water, for a total water fee of $62,489.

PBSS also disputed Feeser's assertion that the prior use of the property consumed between 25 and 176 percent more water than other properties. PBSS pointed out that the 15,500-square-foot self-storage facility occupied only a small part of the 6.4 acre parcel and no recreational vehicle washing was allowed. Thus the historic water use came from the operation of the construction yard where there was a regular practice of washing equipment on-site. PBSS offered data on water use at its other self-storage facilities. PBSS asserted that its self-storage facility will have only two employees, not two per 1,000 square feet as estimated in the RCS study. PBSS stated that if it would help move the matter along, it would agree not to allow RV washing on the premises.

*Staff recommendation*

The City's staff recommended two different impact fee schedules for self-storage facilities depending on whether RV's

4

were stored and washed on-site. If RV's were stored and washed on-site, the fee schedule for water would be as suggested in the RCS study. If the water is used indoor only, the staff recommended impact fees of $216 for the water system improvements, $900 for the state water supply, and $3,761 for recycled water development per 1,000 square feet. The alternative indoor use only fees were calculated at 20 percent of the fees charged in the office use category.

Comparing other city's impact fees, the staff report states: "It is difficult to compare development impact fees across different cities, as each city prioritizes different facilities and infrastructure more than others. Furthermore, cities do not all have the same types of infrastructure. For example, the impact fee schedule from the City of Atascadero does not include water wastewater treatment facilities and thus Atascadero does not include those fees. Other cities may include additional fees associated with development in particular locations, such as the City of San Luis Obispo with different fees if the development is near the airport. The City of Pismo Beach has a strong need to ensure its water, wastewater, and recycled water systems are supported, whereas other cities may not have this same focus."

*City's resolution*

Based on the RCS study and the City's staff report, the City passed a resolution establishing impact fees for self-storage use and self-storage only indoor water use. For self-storage the fees were as recommended by the RCS study, that is, the same as light industry. For self-storage only indoor water use, the fees were as recommended by the staff report, that is, 20 percent of the office use category fees.

The resolution stated in part: "The light industrial, self-storage, and self-storage indoor water use only development impact fees will be used only to pay for the portion of the various City infrastructure that supports new development within those land-uses and infrastructure categories."

*PBSS's appeal to City*

PBSS appealed the resolution to the City. It presented a second Cannon study which concluded the RCS study was inadequate. The RCS study improperly assumed the water use for self-storage would be the same as the light industrial use; ignored the uniqueness of self-storage use; improperly assumed there would be two employees for every 1,000 square feet, when there will be only two employees total; improperly assumed that self-storage square footage had some relation to water use; and improperly assumed traffic for self-storage would be the same as retail and office uses.

The City denied the appeal. PBSS paid the fees under protest, electing the indoor water use only schedule. Under that option, the City does not allow RV storage on the premises.

*Petition for writ of mandate*

PBSS petitioned the trial court for a writ of mandate directing the City to vacate its fee resolution and refund the contested fees. PBSS alleged that there is no reasonable relationship between the fee imposed and the type of development on which it is imposed.

PBSS claimed that the RCS study does not represent a true effort to establish reasonable fees for a self-storage facility. Instead, City Administrator Feeser used RCS to "reverse-engineer" her desired result. The sole basis for the result was her conclusion that the former self-storage facility on the property

6

used 25 to 176 percent more water than other properties classified as office uses. There is no evidence to support that conclusion. At a City council meeting Feeser stated that the fees would be used to reimburse the City for infrastructure already completed or to support future capital projects. PBSS's self-storage facility would have only two employees total, not two per 1,000 square feet as stated in the RCS study.

*Ruling*

The trial court granted the writ of mandate. The court found that the RCS study on which the City relied did not demonstrate a reasonable connection between the amount of the fee and the burden the project would place on the City's infrastructure. The court stated: "Here the inadequate connection between the Resolution's new [fees] and the burden created is best exemplified in the RCS Study, which states that '[i]t is difficult to determine what demand the City's Water Master Plan consultants would have assigned to *Industrial Uses* as such uses were not anticipated by the City at that time. As a result, RCS recommends the application of the same 0.196 acre-feet per year…' RCS's uncertainty does not support a connection between the recommended fees and the burden ultimately created by the Project."

The trial court also stated that the RCS's reliance on the Maximus study defies logic. The RCS study was undertaken because the Maximus study did not include a land use category that best reflects a self-storage facility's burden on infrastructure.

The trial court found the assumptions in the RCS study that self-storage falls in the same category as warehousing and that self-storage will have two employees per 1,000 square feet

7

are not supported by the evidence.  The court also found Feeser's belief that the property used 25 to 176 percent more water than other properties classified as office use was not supported by the evidence.

The trial court also found Feeser's statement that the fees would be used to reimburse the City for infrastructure already completed was not an inadvertent misstatement.  The court concluded that any such use of the fees would violate section 66001, subdivision (g).

DISCUSSION

I.

*Mitigation Fee Act*

The Mitigation Fee Act was enacted by the Legislature in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to the development projects.  (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864.)

Section 66001, subdivision (a) provides in part:  "In any action establishing, increasing, or imposing a fee as a condition of approval of a development project by a local agency, the local agency shall do all of the following:  [¶] (1) Identify the purpose of the fee.  [¶] (2) Identify the use to which the fee is to be put. . . . [¶] (3) Determine how there is a reasonable relationship between the fee's use and the type of development project on which the fee is imposed.  [¶] (4) Determine how there is a reasonable relationship between the need for the public facility and the type of development project on which the fee is imposed."

Such fees are justified only to the extent that they are limited to the cost of increased services made necessary by the development.  (*Shapell Industries, Inc. v. Governing Board* (1991)

8

1 Cal.App.4th 218, 235.)  A local agency must show that a valid method was used to arrive at the fee, one that establishes a reasonable relationship between the fee and the burden created by the development.  (*Ibid*.)

The agency's action in establishing the fees is quasi-legislative.  (*Tanimura & Antle Fresh Foods, Inc. v. Salinas Unified School Dist.* (2019) 34 Cal.App.5th 775, 792.)  The local agency need only show a reasonable relationship between the type of development and the fee imposed.  (*Ibid*.)  It need not show a reasonable relationship between the fee imposed and any particular development project.  (*Ibid*.)

The local agency has the initial burden of producing evidence sufficient to demonstrate that it used a valid method to establish the fee (*Tanimura & Antle Fresh Foods, Inc. v. Salinas Unified School Dist., supra*, 34 Cal.App.5th at pp. 786-787.)  If the agency meets its burden, the developer must show that the record before the agency clearly did not support the determination of a reasonable relationship between the fee and the type of development.  (*Id*. at p. 787.)

II.

*Standard of review*

Because the City's determination of the appropriate fee is quasi-legislative, we review the City's action under the narrow standards of ordinary mandate.  (*Tanimura & Antle Fresh Foods, Inc. v. Salinas Unified School Dist., supra*, 34 Cal.App.5th at p. 786.)  We determine only whether the City's action was arbitrary, capricious or entirely lacking in evidentiary support.  (*Ibid*.)  We make the determination de novo, as a matter of law.  (*Ibid*.)

## III.

*City's determination is arbitrary, capricious,*
*and without evidentiary support*

The City contends the trial court erred in failing to properly apply the highly deferential standard of review to the City's quasi-legislative action.

Self-storage is not a new type of business. Such facilities have been operating in this state for decades. Instead of a study of self-storage facilities, the City relied on the RCS study. That study assumes, without evidence or even an explanation, that self-storage is similar to light industry. The study simply lists "light warehousing (self-storage units)" as a light industrial use, as if that were explanation enough. The RCS study is purported to be based on the Maximus study. But the Maximus study does not consider light industry or self-storage. The RCS study states that it can create a reasonable nexus for self-storage impact fees "by replicating as close as possible the 2004 [Maximus study] calculations as though . . . Self-storage Units categories had been included in the 2004 effort." How one can replicate calculations that never existed remains a mystery. It also remains a mystery how the City's staff concluded that if only indoor water use were allowed, the fees would be 20 percent of the fee in the office use category. It seems a number pulled out of nowhere.

PBSS insisted that self-storage is separate and distinct from other uses for the purpose of assessing impact fees. The City conceded the point by creating separate categories for self-storage. But the RCS study on which the fee is based makes no attempt to study actual self-storage facilities, nor does the City's staff report. There is simply no evidence to support the City's conclusion that the fees it established are reasonably related to

10

the burden self-storage facilities place on the City's infrastructure. The City's action in establishing the amount of the fees was arbitrary and capricious.

The City argues that there is nothing irrational about comparing a massive self-storage facility to a light warehouse of the same size. Whether the comparison is rational would depend on the evidence. A self-storage facility and a light warehouse are different types of uses. That is why the City placed self-storage in a separate category. The RCS study simply gives both light warehousing and self-storage as examples of what it considers light industry. Neither RCS nor the City point to any evidence that light warehousing and self-storage have similar impacts on the City's infrastructure. A bare conclusion that they do is not evidence.

Moreover the RCS study does not even attempt to analyze the specific burdens of light warehousing. The study simply gives light warehousing as one example of what it considers light industry.

The City complains the trial court rejected evidence that the former 15,500-square-foot self-storage unit on the property used between 25 and 176 percent more water than typical office use. We review the trial court's factual findings under the substantial evidence standard. (*Walker v. City of San Clemente* (2015) 239 Cal.App.4th 1350, 1363.) Substantial evidence means evidence that is credible and of solid value, not just any evidence. (*Estate of Teed* (1952) 112 Cal.App.2d. 638, 644.) The City points to nothing in the record that would compel the trial court to find the evidence credible.

Even had the evidence been admitted, it would not have made a difference. At best the evidence would only show the

11

historic use of water at one former self-storage facility. But the fees are not based on one facility. Instead the fees are based on the type of use. (*Tanimura & Antle Fresh Foods, Inc. v. Salinas Unified School Dist.*, *supra*, 34 Cal.App.5th at p. 792.)

The City argues the trial court improperly focused on the character of PBSS's particular project, instead of the general class of use. Even assuming that to be true, it is irrelevant. Our review is de novo. (*Tanimura & Antle Fresh Foods, Inc. v. Salinas Unified School Dist.*, *supra*, 34 Cal.App.5th at p. 786.) We conclude the evidence does not show a reasonable relationship between the fee imposed and the burden on the City's infrastructure arising from a self-storage type of facility.

Because our review is de novo, it is also irrelevant that the trial court may have relied on Feeser's statement that the fee be used to reimburse the City for the cost of existing facilities. The use of the fee is governed by section 66001, subdivision (g): "A fee shall not include the costs attributable to existing deficiencies in public facilities, but may include the costs attributable to the increased demand for public facilities reasonably related to the development project in order to (1) refurbish existing facilities to maintain the existing level of service or (2) achieve an adopted level of service that is consistent with the general plan."

DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____

David Fleishman, City Attorney; Richards, Watson & Gershon and T. Peter Pierce; Greines, Martin, Stein & Richland and Timothy T. Coates for Defendants and Appellants.

Adamski Moroski Madden Cumberland & Green and Michelle L. Gearhart for Plaintiff and Respondent.